[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 01-11398

_____

D. C. Docket No. 00-CR-00109

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 15, 2002
THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RAM KUMAR SINGH, a.k.a.
Ashivil Kumar, a.k.a. Mohan Kumar,
a.k.a. Lawrence Birch, a.k.a. Kenneth Bryant,
a.k.a. Edwin Cintron, a.k.a. Caleb Deitch,

Defendant-Appellant.

_____

No. 01-11399

_____

D. C. Docket No. 00-00213-CR-1-001

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RAJIV R. SINGH, a.k.a. Dev Anand,

a.k.a Alan Matthew, a.k.a. Henry
Mehta, a.k.a. Jarad D. Mortin,

                                        Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Alabama
_____
**(May 15, 2002)**

Before ANDERSON, Chief Judge, DUBINA, Circuit Judge, and MILLS[*], District
Judge.

RICHARD MILLS, District Judge:

Posit: In order for a defendant to receive a two-level enhancement pursuant

to U.S.S.G. § 2F1.1(b)(6)(B), must the defendant <u>personally</u> commit a substantial

part of the fraudulent scheme from outside of the United States?

We think not, and therefore, affirm Defendant's sentence.

## I. BACKGROUND

From July 1998 to May 2000, Ram Kumar Singh (a/k/a Rajiv Singh), along

with his co-conspirators in Kuwait, engaged in a "call sell" scheme to defraud

AT&T, Bell South, and other long distance and local telephone service providers.

Generally, the scheme worked like this: Singh would obtain rental space at

_____

[*]Honorable Richard Mills, U. S. District Judge for the Central District of Illinois, sitting
by designation.

2

various locations in Alabama and Louisiana (and other states) and, then, would establish local and long distance telephone service at those locations using false personal and business identities and fraudulent social security numbers. Meanwhile, Singh's Kuwaiti contacts would set up telephone banks in Kuwait to receive the telephone calls coming from Singh's telephone lines.

Once telephone service had been established, long distance telephone calls were placed to both domestic and Middle Eastern countries from Singh's telephone lines. Specifically, Singh would call Kuwait and then would connect that party who was using one of Singh's co-conspirator's telephone banks to a receiving party in a different country using the three-way calling system on Singh's telephone lines.[1] Singh's co-conspirators would collect a fee from their Kuwaiti customers and would wire a portion of that money to Singh. When the telephone bills came due, Singh would not pay them and would move on to a new location. Singh's telephone bills in Alabama totaled $126,172.00 and in Louisiana totaled $68,784.05.

On June 30, 2000, a federal grand jury sitting in the Southern District of Alabama returned an Indictment against Singh charging him with one count of

---

[1]Singh's telephone lines were also used directly for domestic and foreign long distance telephone calls.

conspiracy to commit wire fraud in violation of 18 U.S.C. § 371 and with fourteen counts of fraudulently using a social security number in violation of 42 U.S.C. § 408(a)(7)(B) in connection with his call sell scheme. On August 17, 2000, a federal grand jury sitting in the Middle District of Louisiana returned an Indictment against Singh charging him with one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 371 and with seven counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 2 in connection with his call sell scheme.

Thereafter, the Louisiana Indictment was transferred to the Southern District of Alabama pursuant to Federal Rule of Criminal Procedure 20, and Singh pleaded guilty to the two counts of conspiracy to commit wire fraud charged in the two Indictments.[2] After a sentencing hearing which spanned two days and at which Singh testified twice, the district court sentenced Singh to 33 months of imprisonment on each of his two counts of conviction and imposed restitution in the amount of $194,966.05. The district court ordered that Singh's two 33 month sentences of imprisonment be served concurrently.

On appeal, Singh challenges his 33 month sentence on three grounds.

First, Singh argues that the district court erred in awarding him a two level

---

[2]The remaining counts in the two Indictments were dismissed pursuant to a motion by the Government.

enhancement in his adjusted offense level, pursuant to U.S.S.G. § 2F1.1(b)(6)(B) (2000), based upon a finding that a substantial part of the fraudulent scheme was committed from outside the United States. Singh asserts that the plain language of that Sentencing Guideline provision indicates that the enhancement is only justified if a substantial part of the fraudulent scheme originated from outside of the United States. Singh contends that a substantial part of his call sell scheme did not originate from outside of the United States because every fraudulent telephone call originated from the United States, because the fraudulent telephone service accounts were established in the United States, and because the three-way calling connection was made by an operator within the United States.

Furthermore, Singh claims that it is clear that the United States Sentencing Commission did not intend U.S.S.G. § 2F1.1(b)(6)(B) to apply in this case because there was no foreign connection which was established in order to conceal the crime, which made the discovery of the crime more difficult, or which was established in order to avoid the application of United States law. Finally, Singh asserts that, in order for the enhancement to apply, the defendant must personally commit part of the scheme from outside of the United States. Because he did not take any action outside of the United States in furtherance of the call sell scheme, Singh argues that the district court erred in enhancing his adjusted offense level

5

pursuant to U.S.S.G. § 2F1.1(b)(6)(B).

Second, Singh asserts that the district court erred in enhancing his adjusted offense level by two-levels, pursuant to U.S.S.G. § 3C1.1, for obstructing justice because, contrary to the district court's finding, he did not deny the existence of a foreign connection or deny that at least some of the telephone calls were being made through Kuwait. Rather, Singh maintains that he simply denied having personally made the telephone calls to Kuwait and that the Government's evidence failed to prove otherwise.[3] Moreover, Singh asserts that, to the extent that the district court found otherwise, it did so because it misunderstood Singh's testimony due to Singh's limited ability to speak English. In any event, Singh contends that, if this Court finds his enhancement under U.S.S.G. § 2F1.1(b)(6)(B) to be invalid, then his testimony regarding the foreign connection would be immaterial and his obstruction of justice enhancement would be void.

Third, Singh claims that the district court erred in denying his acceptance of

_____

[3]Singh testified at his sentencing hearing that the calls were made by immigrants who followed him around the country in order to use his fraudulently established telephone service and by immigrants who resided in the various locations at which he established fraudulent telephone service. Singh also testified that these immigrants would pay him $500.00 in order to establish telephone service at the various locations throughout the country, and then, the immigrants would come to that location and would made long distance and international telephone calls. However, Singh denied ever acting as a telephone operator for any other party, denied ever placing telephone calls for anyone, and denied ever using the telephone's three-way calling feature in order to connect any party.

6

responsibility reduction pursuant to U.S.S.G. § 3E1.1, asserting that he did not willfully testify falsely in order to obstruct justice and that he has accepted responsibility for crimes. Accordingly, Singh asks us to remand this case for re-sentencing.

## II. ANALYSIS

### A. <u>"OUTSIDE THE UNITED STATES" ENHANCEMENT</u>

U.S.S.G. § 2F1.1(b)(6) provides:

> If (A) the defendant relocated, or participated in relocating, a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials; (B) a substantial part of a fraudulent scheme was committed from outside of the United States; or (C) the offense otherwise involved sophisticated means, increase by **2** levels. If the resulting offense level is less than level **12**, increase to level **12**.

<u>Id</u>. Neither this Court nor any other court of which we are aware has determined whether this enhancement applies to a fraudulent call sell scheme such as the one involved in this case. Moreover, neither this Court nor any other court of which we are aware has analyzed or determined the meaning or scope of the phrase "committed from outside of the United States" as it is used in subsection (B).

"'[L]anguage in the Sentencing Guidelines is to be given its plain and ordinary meaning. Further, where the guidelines provide no indication as to a particular application[,] the Court looks to the language and purpose of the Sentencing Guidelines for instruction.'" <u>United States v. McClain</u>, 252 F.3d 1279,

7

1286 (11th Cir. 2001), quoting United States v. Pompey, 17 F.3d 351, 354 (11th Cir. 1994).

Singh's argument finds some support in the stated reason for Amendment 577 (i.e., the amendment which amended U.S.S.G. § 2F1.1) which is contained within the Guidelines' Supplement to Appendix C. Therein, the Sentencing Commission noted that "[t]he first two prongs address conduct that the Commission has been informed often relates to telemarketing fraud . . . . Specifically, the Commission has been informed that fraudulent telemarketers increasingly are conducting their operations from Canada and other locations outside the United States." U.S.S.G. App. C, amend. 577. Here, the call sell scheme did not involve a telemarketing scheme, let alone a telemarketing scheme operated from outside of the United States.

However, the Sentencing Commission also noted that Amendment 577 may apply to criminal conduct in connection with fraudulent schemes perpetrated by means other than telemarketing fraud. Id. In addition, the background notes to U.S.S.G. § 2F1.1 state that "[t]his guideline is designed to apply to a wide variety of fraud cases" and also state that "[s]ubsection (b)(6) implements, in a broader form, the instruction to the Commission in section 6(c)(2) of Public Law 105-184." Thus, we do not believe that the two-level enhancement under U.S.S.G. §

2F1.1(b)(6)(B) is reserved solely to punish telemarketing fraud.

Furthermore, were we to adopt Singh's interpretation of the guideline, we would do a disservice to its plain meaning. U.S.S.G. § 2F1.1(b)(6)(B) only requires that a substantial portion of the scheme be committed from outside of the United States; it does not require that the scheme originate from outside of the United States. Singh's reading of the guideline would require us to insert "originate" into the guideline provision for substantial–a course of action we should not and will not follow.

Finally, we do not believe that the defendant must personally take action from outside of the United States in order for the enhancement to apply. First, if we were to limit a defendant's culpability as asserted by Singh, we would contradict the well-established principle that an act may be imputed from one co-conspirator to another. See United States v. Gallo, 195 F.3d 1278, 1281 (11th Cir. 1999)(holding that "[t]he Guideline instructs that an act may be imputed from one co-conspirator to another provided the conduct was (1) reasonably foreseeable, and (2) in furtherance of the jointly undertaken criminal activity . . . .)(internal quotation omitted); see also United States v. Rayborn, 957 F.2d 841, 844 (11th Cir. 1992)(holding that "all losses caused by fraud or deceit which are governed by . . . § 2F1.1 may be imputed to a defendant who was a member of the conspiracy

9

which caused those losses.").

Second, a close reading of the guideline provision indicates that the Sentencing Commission did not intend to limit the enhancement as argued by Singh. Subsection (A) of U.S.S.G. § 2F1.1(b)(6) specifically states that, "[i]f the defendant relocated, or participated in relocating . . .", then a two-level enhancement is appropriate. Id. (emphasis added). Subsection (B) provides no such qualifier or limitation upon individual liability. Thus, the statutory rule of inclusio unius est exclusio alterius applies. See United States v. Koonce, 991 F.2d 693, 698 (11th Cir. 1993)(recognizing the well-established canon of statutory construction that the inclusion of one implies the exclusion of others).

In the case sub judice, the district court possessed ample evidence to apply the enhancement. Audrey Hanes, a fraud investigator for AT&T, testified at Singh's sentencing hearing that ninety-nine percent of the telephone calls attributed to Singh were international calls and that ninety percent of the telephone calls were placed to Kuwait and then employed the telephone's three-way calling feature to connect the Kuwaiti party with a party in another country. While it is true that the Government did not produce any evidence regarding the identity or number of co-conspirators in Kuwait or any other country, the fact that the telephone's three-way calling feature was employed ninety percent of the time to

10

place telephone calls to Kuwait and then to other countries implies that there was someone else involved, that that someone else was outside of the United States, and that that someone else took actions outside of the United States in furtherance of the fraudulent scheme. Furthermore, the Government presented evidence that Singh received (at a Western Union office in Mobile, Alabama) a $500.00 wire transfer from someone in Kuwait.

Based upon this evidence, we cannot say that the district court erred in enhancing Singh's sentence by two levels pursuant to U.S.S.G. § 2F1.1(b)(6)(B). The district court made a factual finding that a substantial portion of the conspiracies of which Singh was convicted occurred outside of the United States. See United States v. Bradford, 277 F.3d 1311, 1312 (11th Cir. 2002), citing United States v. McClendon, 195 F.3d 598, 600 (11th Cir. 1999)(noting that "[t]his Court reviews a district court's factual findings for clear error and their application of the Guidelines to those facts *de novo*."). The evidence clearly established that some of the conspiracy's acts occurred outside of the United States, and Singh is responsible for these actions by his co-conspirator(s) because these acts were reasonably foreseeable and were taken in furtherance of the conspiracy. Gallo, 195 F.3d at 1281. Accordingly, we affirm the district court's decision to enhance Singh's adjusted offense level by two-levels, pursuant to U.S.S.G. §

11

2F1.1(b)(6)(B), because a substantial part of the fraudulent scheme of which he was convicted was committed from outside of the United States.

B.    OBSTRUCTION OF JUSTICE ENHANCEMENT

U.S.S.G. § 3C1.1 provides for a two level enhancement for defendants who "willfully obstruct[] or impede[], or attempt[] to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction . . . ." Id.  A defendant may obstruct or impede justice by "committing, suborning, or attempting to suborn perjury." U.S.S.G. § 3C1.1, comment. (n. 4(b)).  Perjury, for purposes of applying this enhancement, has been defined by the United States Supreme Court as "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Dunnigan, 507 U.S. 87, 94 (1993); see United States v. Hubert, 138 F.3d 912, 915 (11th Cir. 1998)(holding that "[p]erjury under oath on material matters, not due to confusion or mistake, justifies such an increase.").  For purposes of U.S.S.G. § 3C1.1, "'[m]aterial' . . . means evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1, comment. (n. 6).

When applying this enhancement, "the district court [should] make specific

12

findings as to each alleged instance of obstruction by identifying the materially false statements individually . . . ." United States v. Arguedas, 86 F.3d 1054, 1059 (11th Cir. 1996). However, "a general finding that an enhancement is warranted suffices if it encompasses all of the factual predicates necessary for a perjury finding."[4] United States v. Lewis, 115 F.3d 1531, 1538 (11th Cir. 1997); see United States v. Diaz, 190 F.3d 1247, 1256 (11th Cir. 1999)(same). "We review for clear error the district court's factual findings necessary for an obstruction of justice enhancement based on perjury . . . [and] accord great deference to the district court's credibility determinations." United States v. Gregg, 179 F.3d 1312, 1316 (11th Cir. 1999)(internal citation omitted); 18 U.S.C. § 3742(e). "[W]e give due deference to the district court's application of the guidelines to the facts", United States v. Yount, 960 F.2d 955, 956 (11th Cir. 1992), and review the district court's "application of law to those facts *de novo*." United States v. Trout, 68 F.3d 1276, 1279 (11th Cir. 1995); see United States v. Rodriguez, 279 F.3d 947, 951 (11th Cir. 2002)(same).

---

[4]Four elements must be present in order for a court to make a finding that a defendant perjured himself: (1) the testimony must be under oath or affirmation; (2) the testimony must be false; (3) the testimony must be material; and (4) the testimony must be given with the willful intent to provide false testimony and not as a result of a mistake, confusion, or faulty memory. Dunnigan, 507 U.S. at 94; 18 U.S.C. § 1621(1); see United States v. Forrest, 623 F.2d 1107, 1110 (5th Cir. 1980)(holding that "[i]n order to prove that a defendant committed perjury, the government must prove that his statements were false and that he did not believe them to be true.").

In the present case, the district court made the specific factual findings necessary to support the obstruction of justice enhancement under U.S.S.G. § 3C1.1. After hearing him testify twice, the district court found that Singh had provided false testimony at his sentencing hearing when he denied a Kuwaiti connection to his call sell scheme, when he denied placing the telephone calls himself, and when he denied using the names and social security numbers on his "customer list" in order to fraudulently establish telephone service in the United States as his part of the call sell scheme. In short, the district court found that Singh had only admitted to a minor part of the crime.

We believe that the record supports the district court's finding that Singh committed perjury when he testified during his sentencing hearing. First, we defer to the district court's credibility finding as it had the opportunity to see Singh and to view him while he testified and found him not to be telling the complete truth. Gregg, 179 F.3d at 1316. Second, as noted supra, the evidence established that the calls originated from the United States and that ninety percent of those telephone calls were made to Kuwait and then the telephone's three-way calling feature was employed to connect the Kuwaiti party with a party in some other country. Third, the evidence established that Singh called the same telephone numbers in Kuwait from each location where he fraudulently established telephone service.

Fourth, Singh's testimony that five customers from New York City followed him around the country in order to use his telephone system is unworthy of credence, especially in light of the evidence presented by the Government that neither Singh's neighbors nor his landlord saw anyone but him enter the facilities which he had rented. Fifth, the evidence showed that Singh received a wire transfer of $500.00 from someone in Kuwait.[5] Thus, Singh's continued denial of a Kuwaiti connection is incredible, is the result of a willful intent to provide false testimony, and cannot possibly be the result of a mistake, confusion, or faulty memory.[6]

Accordingly, because the Sentencing Guidelines allow for an enhancement for obstruction of justice when a defendant commits perjury during a sentencing hearing and because the district court correctly applied the appropriate standard in determining that Singh had committed perjury during his sentencing hearing, we cannot say that the district court's decision to enhance Singh's adjusted offense level pursuant to U.S.S.G. § 3C1.1 was clearly erroneous. Therefore, we affirm the

---

[5]Singh's denial of a foreign connection to the call sell scheme was material in that, had the district court believed his testimony, he would not have received a two-level enhancement to his adjusted offense level pursuant to U.S.S.G. § 2F1.1(b)(6)(B).

[6]There is no evidence in the record to support Singh's contention that the district court improperly enhanced his sentence because the district court could not understand his testimony because of Singh's limited English language skills.

15

district court on this issue.

C.     LOSS OF ACCEPTANCE OF RESPONSIBILITY REDUCTION

Finally, under the Sentencing Guidelines, a defendant may receive a two-level or a three-level reduction in his offense level if he accepts responsibility for his offense(s) in a timely manner. U.S.S.G. § 3E1.1.  We review "the district court's determination of acceptance of responsibility only for clear error." United States v. Dodd, 111 F.3d 867, 870 (11th Cir. 1997).  "A district court's determination that a defendant is not entitled to acceptance of responsibility will not be set aside unless the facts in the record clearly establish that a defendant has accepted personal responsibility." United States v. Sawyer, 180 F.3d 1319, 1323 (11th Cir. 1999).

In the instant case, we cannot say that the district court committed clear error in denying Singh a reduction in his adjusted offense level for accepting responsibility for his crimes or that the record clearly establishes that Singh has fully accepted personal responsibility for his crimes.  As noted supra, the district court did not err in finding that Singh committed perjury when he testified at his sentencing hearing or in finding that Singh only admitted to a minor part of his crimes.

"Conduct resulting in an enhancement under § 3C1.1 . . . ordinarily indicates

16

that the defendant has not accepted responsibility for his criminal conduct",

U.S.S.G. § 3E1.1, comment. (n. 4), and "[a]n adjustment under the guidelines for acceptance of responsibility is not warranted when a defendant's conduct results in an enhancement for obstruction of justice." United States v. Kramer, 943 F.2d 1543, 1547 n. 4 (11th Cir. 1991).  Here, Singh willfully testified falsely at his sentencing hearing, and no extraordinary circumstances exist which would justify applying adjustments under both U.S.S.G. §§ 3C1.1 and 3E1.1.  Accordingly, we affirm the district court's decision not to grant Singh a reduction in his adjusted offense level, pursuant to U.S.S.G. § 3E1.1, for acceptance of responsibility.

For these reasons, we affirm Singh's sentence as imposed by the district court.

**AFFIRMED.**