[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-14830
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 2, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00006-CR-F-N

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JEREMY CHRISTOPHER MCWHORTER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(June 2, 2010)

Before TJOFLAT, BIRCH and WILSON, Circuit Judges.

PER CURIAM:

Jeremy Christopher McWhorter ("McWhorter") appeals his convictions and

sentences for possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) (count one), and possession of a firearm during and in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (count two). On appeal, McWhorter challenges the denial of his motion to reopen a suppression hearing. He also appeals an obstruction of justice enhancement to his sentence. After careful review, we AFFIRM his convictions and sentences.

## I. BACKGROUND

McWhorter filed a pre-trial motion to suppress evidence found during a search of his automobile. At the suppression hearing in April 2008, Corporal Anthony Kestle of the Montgomery Police Department testified that he responded to a call from Katorie Stinson ("Stinson") on 2 May 2007. Stinson said a black male named Jeremy McWhorter, whom she had been dating, had just threatened to shoot and kill her if she told anybody he was involved in a shooting that occurred the day before. Stinson described McWhorter's physical appearance and his vehicle. Stinson also said McWhorter probably had several assault rifles in his car. While Corporal Kestle and Stinson were talking, McWhorter drove by in his car and Stinson pointed him out.

Corporal Kestle followed and stopped McWhorter's vehicle. The driver identified himself as Jeremy McWhorter. Corporal Kestle instructed McWhorter

2

and a male passenger to exit the vehicle. Corporal Kestle then conducted a pat-down search of McWhorter. At that point, Officer M.D. Green arrived to assist. Corporal Kestle obtained McWhorter's consent to do a "wingspan search of the vehicle, any area that was accessible to the driver." Doc. 22 at 13. The purpose of the search was to retrieve any weapons or contraband that would endanger the officers' safety. When Officer Green looked inside the vehicle, he smelled a "very strong" odor of marijuana. Id. at 13. A red backpack found on the rear seat directly behind the driver's seat contained several marijuana seeds, plastic sandwich bags, and two-way radios. Corporal Kestle likewise smelled marijuana when he placed his head inside the vehicle.

McWhorter refused to consent to a search of his trunk, stating that it was unnecessary because "there wasn't anything back there." Id. at 15. Corporal Kestle then requested a canine unit. During a perimeter search of the vehicle's exterior, a drug-sniffing dog scratched on the driver's side door and on the trunk, alerting the police to the presence of narcotics. An officer found marijuana inside the vehicle on the driver's side by the fuse box. Upon opening the trunk, officers discovered three assault rifles and a blue backpack. The dog immediately began hitting at the backpack. An officer opened the backpack and found approximately one pound of what appeared to be marijuana. On cross-examination, Corporal

3

Kestle stated that his video camera had not been working for the past month, and neither his audio or video equipment was operational that day.

Based on the evidentiary hearing, the magistrate judge recommended that McWhorter's motion to suppress be denied. The judge first found that Corporal Kestle had probable cause to stop and search the vehicle based on the credible information provided by Stinson. Alternatively, even absent probable cause, the judge found that the brief, investigative stop was justified under Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868 (1968).[1] The wingspan search was justified by McWhorter's consent. The officers had probable cause to search the rest of the vehicle, including the trunk, based on the smell of marijuana, the drug paraphernalia in the red backpack, and the canine search. The district court adopted the magistrate judge's report and recommendation and denied the motion to suppress.

McWhorter subsequently filed a Motion to Dismiss Indictment or in the Alternative to Exclude Evidence ("motion to dismiss"). He contended that new evidence refuted Corporal Kestle's testimony at the suppression hearing that his patrol car's audiovisual equipment had not been working. A hearing was held on the motion in July 2008. A communications technician testified that he repaired

---

[1] The Supreme Court recognized in Terry that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." 392 U.S. at 22, 88 S. Ct. at 1880.

Corporal Kestle's audiovisual system and it was functioning properly as of 25 April 2007. Nevertheless, the system "very easily" could have failed on the road if problems with the vehicle's alternator or battery occurred. Doc. 59 at 59. The technician further explained that only sergeants or higher-ranked officers have a key to open the vault containing the videotape inside a patrol car. There is no way an officer can destroy a tape without opening the vault. Nor can an officer rewind a tape and record over previously recorded material. An officer may manually turn off the audio and visual recording equipment so that it does not record, however. Records indicated that Corporal Kestle picked up a lapel microphone for his transmitter pack from the repair shop on 2 May 2007.

Corporal Kestle also testified at the July 2008 hearing. He stated that his rank was that of police officer on 2 May 2007 and he had never been a sergeant or higher rank. On 2 May 2007, he was driving his assigned patrol car, the same one that had been in the repair shop in April. He acknowledged that it is standard procedure to turn on the audiovisual equipment when an officer gets in his patrol car, and that he had assumed his camera was working properly when he stopped McWhorter on 2 May 2007.

Following the hearing, the district court denied McWhorter's motion to dismiss but granted his oral motion to continue the trial date. Additionally, the

5

court granted McWhorter permission to file a motion to reopen the suppression hearing.

McWhorter subsequently filed a Motion to Reopen Suppression Hearing and supporting memorandum. He asserted that another hearing was warranted so he could present evidence that Corporal Kestle had materially misrepresented the status of his audiovisual equipment during the suppression hearing. The district court denied McWhorter's motion to reopen the suppression hearing "based upon representations from counsel to the court that the defendant has not discovered any new or additional evidence which would warrant the court granting said motion." Doc. 79.

A jury convicted McWhorter of both counts following a trial in May 2009, at which McWhorter testified in his own defense. At the sentencing hearing, McWhorter objected to the recommendation in the pre-sentence investigation report of a two-level enhancement for obstruction of justice under United States Sentencing Guidelines ("U.S.S.G.") § 3C1.1. The district court overruled the objection and found that the enhancement applied based on McWhorter's perjury at trial. The court sentenced McWhorter within the guidelines range to 13 months imprisonment on count one and 60 months imprisonment on count two, to be served consecutively, and five years of supervised release.

6

This appeal followed.

## II. DISCUSSION

A.  Motion to Reopen the Suppression Hearing

McWhorter first argues that the district court erred in denying his motion to reopen the suppression hearing.[2]  The purpose for reopening the hearing, according to McWhorter, was to test Corporal Kestle's credibility concerning his audiovisual equipment.  McWhorter asserts that Corporal Kestle's credibility was critical to the district court's determination that McWhorter consented to the wingspan search. Additionally, McWhorter suggests it is possible Corporal Kestle destroyed or failed to preserve a recording, in violation of Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963).

We review a district court's denial of a motion to reopen or reconsider a suppression hearing for an abuse of discretion.  United States v. Simms, 385 F.3d 1347, 1356 (11th Cir. 2004).  As noted, the district court denied the motion to reopen based on representations from counsel that McWhorter had no "new or

_____

[2] Within this argument section, McWhorter contends in a footnote that the magistrate judge erred in denying his motion to suppress based on the existence of probable cause to stop and search McWhorter's vehicle. See Appellant's Initial Brief at 10 n.1.  McWhorter also appears to suggest that the magistrate judge erred in finding that McWhorter had consented to a wingspan search of his vehicle. See id. at 9-10.  However, he concedes in his reply brief that he is not actually challenging the denial of the motion to suppress. See Appellant's Reply Brief at 1.  Accordingly, he has abandoned these issues. See United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) (concluding that appellant abandoned his Rule 404(b) argument where he made only passing references to the issue under different topical headings).

7

additional evidence which would warrant the court granting said motion." Doc. 79. This finding is supported by the record. McWhorter made the same arguments in his motion to reopen that he made in his motion to dismiss. Both motions contended that Corporal Kestle's credibility had been compromised by evidence that his audiovisual equipment was functional on 2 May 2007. Additionally, both motions argued that Corporal Kestle may have committed a Brady violation. The evidence pertaining to these arguments was presented at the July 2008 hearing on the motion to dismiss. Corporal Kestle testified at this hearing and was subject to cross-examination. Thus, McWhorter already had the opportunity to present evidence related to Corporal Kestle's audiovisual equipment, and the district court already had the opportunity to assess Corporal Kestle's credibility on this issue and determine if a Brady violation had occurred.

Furthermore, the motion to reopen did not identify any additional evidence which would have made another hearing necessary. For example, the motion to reopen cited video equipment guidelines of the Montgomery City Police Department, which stated, inter alia, that all traffic stops should be recorded. However, Corporal Kestle previously testified at the July 2008 hearing that it is standard procedure for an officer to turn on the audiovisual equipment when the officer gets into his vehicle, and he assumed his camera was working properly on

8

the day in question. The motion to reopen also contended that maintenance logs for Corporal Kestle's patrol vehicle revealed "no records of an electrical system malfunction contemporaneous to the stop of May 2, 2007." Doc. 66 at 4. Such evidence would have been duplicative of the repair technician's testimony at the July 2008 hearing that Corporal Kestle's vehicle had no visible problems with its electrical system. Finally, the motion to reopen referred to an August 2008 inter-office police department memorandum advising that no videotapes had been located for Corporal Kestle's patrol vehicle during the time frame of the traffic stop on McWhorter's car. Given that there was no videotape to introduce into evidence, this memorandum further supports the district court's determination that there was no new or additional evidence which warranted reopening the suppression hearing.

Contrary to McWhorter's argument, Simms does not support a conclusion that McWhorter's motion to reopen should have been granted. In Simms, the district court denied a motion to reopen a suppression hearing because it "found that the officers had not made any inconsistent statements at the suppression hearing." 385 F.3d at 1356. A review of the suppression hearing transcript supported the district court's finding that no inconsistent statements had been made. Id. We therefore concluded that the court had not abused its discretion in

9

denying the motion to reopen on this basis. Id. In contrast to Simms, the denial of the motion to reopen in McWhorter's case hinged on the district court's finding that no new or additional evidence was available which would warrant another hearing, not on the fact that no inconsistent statements had been made. As we have discussed, the district court's stated basis for denying the motion to reopen is supported by the record. Accordingly, the district court did not abuse its discretion in this matter.

B. Obstruction of Justice Enhancement

In his second argument, McWhorter maintains the district court erroneously applied an obstruction of justice enhancement at sentencing. He contends the court's perjury finding was not supported by Katorie Stinson's testimony at trial and that his own testimony was plausible.

We review a district court's factual findings for clear error and the application of an obstruction of justice enhancement based on those facts de novo. United States v. Bradberry, 466 F.3d 1249, 1253 (11th Cir. 2006) (per curiam). U.S.S.G. § 3C1.1 permits a two-level enhancement to a defendant's offense level if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction," and "the obstructive conduct

related to the defendant's offense of conviction and any relevant conduct." U.S.S.G. § 3C1.1 (2009). An enhancement is justified if a defendant commits, suborns, or attempts to suborn perjury. Id., comment (n.4(b)).

A finding of perjury requires the existence of four elements: "(1) the testimony must be under oath or affirmation; (2) the testimony must be false; (3) the testimony must be material; and (4) the testimony must be given with the willful intent to provide false testimony, and not as a result of a mistake, confusion, or faulty memory." United States v. Singh, 291 F.3d 756, 763 n.4 (11th Cir. 2002) (quotation marks and citation omitted). "Material" testimony includes statements "that, if believed, would tend to influence or affect the issue under determination." Id. at 763 (quotation marks and citation omitted). The district court is in the best position to "assess a defendant's demeanor, apparent sincerity, intonation, expression, gesticulations, and a wide range of other considerations that are pertinent in determining whether he has perjured himself." United States v. Williams, 340 F.3d 1231, 1240 (11th Cir. 2003). Consequently, we give "special deference" to a district court's ruling that a § 3C1.1 enhancement is warranted on this basis. Id. at 1241; see also Singh, 291 F.3d at 763 ( "'We . . . accord great deference to a district court's credibility determinations.'").

At the sentencing hearing, the district court recognized that a defendant

11

should not be punished merely because he chose to testify at trial and the jury disbelieved that testimony. The court nevertheless found that McWhorter's trial testimony constituted an obstruction of justice:

> [I]n this case, the defendant's testimony was designed to persuade the jury that he had no knowledge of any criminal conduct or activity that he had engaged in, that he was not aware of any drugs in his car, he was not aware of any guns in his car, and he even testified that the smell of marijuana could not be had from his car, when, in fact, law enforcement testified to the contrary.
>
> I do find that in this case, Mr. McWhorter's testimony was designed to persuade jurors that he was not engaged in any criminal conduct, and his testimony, if believed at trial, would have resulted in an acquittal at trial. And it was not given merely for the purpose of explaining how incriminating evidence ended up in his car, but it was intended to deliberately convince the jury quite to the contrary, that Mr. McWhorter had no association whatsoever with the drugs and guns which both were found in his car and which a witness testified before the drugs and guns were found that he actually had them in the trunk of his car.

Doc. 141 at 13-14.

The district court's findings are supported by the record. Stinson, who was McWhorter's live-in girlfriend at the time, testified at trial that McWhorter told her in April 2007 that he thought he was going to start selling marijuana. Stinson further testified that, on 2 May 2007, McWhorter had his car the whole day and she saw him put something into the trunk. Shortly thereafter, McWhorter threatened her while armed with an assault rifle. Stinson warned the police that McWhorter

12

was known to carry rifles. Less than an hour after his confrontation with Stinson, McWhorter was seen driving his vehicle. The police found approximately 1.1 pounds of marijuana and three loaded assault rifles in the trunk, in addition to a backpack in the rear seat containing marijuana seeds and stems, two-way radios, and plastic sandwich bags commonly used to package marijuana for sale. Two police officers testified that there was a strong odor of marijuana inside the vehicle.

McWhorter specifically contradicted this evidence during his trial testimony. He denied threatening Stinson on 2 May 2007. He denied owning or carrying a gun that day. He denied knowing there was marijuana or firearms in the trunk. He denied owning the backpack found in the rear seat or even being aware of its presence until the police found it. He admitted he was familiar with the smell of marijuana but insisted "[t]here was no smell of marijuana in my car." Doc. 140 at 97. McWhorter claimed he "know[s] now" the firearms were placed in his vehicle by a former drug-dealing friend who borrowed the car earlier that day. Id. at 88, 90, 98-99.

McWhorter's continued denial of any knowledge of the marijuana or firearms in his vehicle reflects a willful intent to give false testimony. He did not suggest that he was confused, unable to remember, or mistaken about what happened. To the contrary, he affirmed that he had "told the truth." Id. at 89. The

13

district court found otherwise, however, and we afford great deference to the court's credibility determination as it had the opportunity to view McWhorter as he testified.  See Singh, 291 F.3d at 763-64.  Moreover, McWhorter's testimony was material because, if believed, it would have negated the required element of knowledge needed to sustain a conviction under 21 U.S.C. § 841(a)(1).  See United States v. Poole, 878 F.2d 1389, 1391 (11th Cir. 1989) (per curiam) ("In order to convict . . . under 21 U.S.C.A. § 841(a)(1), the government had to prove three elements:  (1) knowledge; (2) possession; and (3) intent to distribute.").  Similarly, McWhorter's testimony, if believed, would have negated the predicate offense for 18 U.S.C. § 924(c)(1) that the defendant was engaged in a drug trafficking crime when he possessed the firearm.  See id. at 1392.  Accordingly, we conclude that the district court did not clearly err in enhancing McWhorter's offense level under U.S.S.G. § 3C1.1 for committing perjury during trial.  See Singh, 291 F.3d at 764 (finding no clear error in § 3C1.1 application where district court correctly determined that defendant committed perjury during his sentencing hearing).

## III. CONCLUSION

In sum, the district court did not abuse its discretion in denying McWhorter's motion to reopen the suppression hearing, and it properly applied an enhancement to McWhorter's offense level for obstruction of justice.  We therefore

14

AFFIRM McWhorter's convictions and sentences.

**AFFIRMED.**