[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 12, 2012
JOHN LEY
CLERK

No. 11-11996
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cr-20850-DLG-2

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ADILSON FERNANDES DE AGUIAR,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 12, 2012)

Before TJOFLAT, CARNES and ANDERSON, Circuit Judges.

PER CURIAM:

Adilson De Aguiar appeals his twenty-month concurrent sentences, imposed

in the middle of the applicable guideline range after he pleaded guilty to conspiracy to commit access device fraud, in violation of 18 U.S.C. § 1029(b)(2); possession of device-making equipment with intent to defraud, in violation of 18 U.S.C. § 1029(a)(4); and possession of fifteen or more counterfeit and unauthorized access devices, in violation 18 U.S.C. § 1029(a)(3). On appeal, Aguiar argues that the two-level enhancement pursuant to U.S.S.G. § 2B1.1(b)(9)(B) should not apply to his offense level because a "substantial" part of his fraudulent credit-card scheme was not "committed from outside the United States."[1]

We review the district court's factual findings for clear error and the district court's application of the sentencing guidelines to those facts de novo. United States v. McGuinness, 451 F.3d 1302, 1304 (11th Cir. 2006). We review de novo the district court's legal interpretation of the sentencing statutes and sentencing guidelines. United States v. Johnson, 375 F.3d 1300, 1301 (11th Cir. 2004).

Pursuant to U.S.S.G. § 2B1.1(b)(9)(B), a two-level enhancement applies to a defendant's offense level if "a substantial part of a fraudulent scheme was committed from outside the United States." This section does not define "substantial," nor apparently has any court had occasion to consider the precise

---

[1]    After Aguiar appealed, this section moved to § 2B1.1(b)(10)(B).

definition.  However, "language in the Sentencing Guidelines is to be given its plain and ordinary meaning.  Further, where the guidelines provide no indication as to a particular application the Court looks to the language and purpose of the Sentencing Guidelines for instruction."  United States v. Pompey, 17 F.3d 351, 354 (11th Cir. 1994) (citations omitted).

Our only previous discussion of the level enhancement at issue in this case was in United States v. Singh, 291 F.3d 756 (11th Cir. 2002), where we held that a defendant need not personally commit a substantial part of the fraudulent scheme from outside of the United States in order to qualify for a two-level enhancement under U.S.S.G. § 2B1.1(b)(9)(B).[2]  Id. at 761-62.  Singh, along with his co-conspirators in Kuwait, engaged in a "call sell" scheme to defraud long distance and local telephone service providers.  Id. at 759.  Singh would establish telephone service at locations in the United States using false personal and business identities.  Id.  Meanwhile, Singh's Kuwaiti contacts would set up telephone banks in Kuwait.  Id.  Singh would call the phone banks in Kuwait and use his phone's three-way calling system to route calls from third parties through the phone bank.  Id.  These third parties would pay Singh's co-conspirators a fee

---

[2]    At the time that we decided Singh, U.S.S.G. § 2F1.1(b)(6)(B) applied, but that section was embodied by § 2B1.1(b)(9)(B) at the time of Singh's sentencing.

for the connection service.  Id.  A portion of this fee was forwarded to Singh, who would move to another location without ever paying his own phone bills in America.  Id.

We held that the level enhancement was not reserved solely to punish telemarketing fraud and that the statute did not require that the scheme originate from outside the United States.  Id. at 761-62.  We then concluded that the evidence clearly established that a significant part of the conspiracy's acts occurred outside of the United States, in light of the fact that ninety-nine percent of Singh's telephone calls were international, that ninety percent of the telephone calls were placed to Kuwait while employing the telephone's three-way calling feature, and that Singh received a wire transfer in Alabama from someone in Kuwait.  Id. at 762.  Because these acts were reasonably foreseeable and were taken in furtherance of the conspiracy, Singh was responsible for his Kuwaiti co-conspirators' actions outside the United States.  Id.

In the current case, Aguiar contends that the commission of the crime was in Miami, where he and several of his co-conspirators would create fraudulent credit cards and use them to purchase goods.  We disagree and find that the district court did not err in applying the two-level enhancement.  Regardless of the precise definition of "substantial," Aguiar's conduct easily satisfies § 2B1.1(b)(9)(B).

4

The sine qua non of his scheme was obtaining stolen credit card account numbers. There is no dispute that these numbers were stolen in Brazil by Aguiar's co-conspirators, then emailed from Brazil to Aguiar. These acts are imputed to Aguiar himself since they are reasonably foreseeable and in furtherance of the jointly undertaken criminal activity. Singh, 291 F.3d at 761-62. Additionally, every time Aguiar and his co-conspirators used the fraudulent credit cards, an approval was sent to Brazil, where Brazilian banks would act by extending credit on the cards. The final step of Aguiar's scheme–and indeed the only reason it produced any money–was to send the fraudulently obtained goods to Brazil and sell them for profit. Occasionally, Aguiar himself would transport the goods to Brazil to be sold.

Two of the most important acts (stealing card numbers and selling the goods for profit) occurred in Brazil, as did the extension of credit. That is, parts of the beginning, middle, and end of Aguiar's scheme took place outside of the United States. The district court's factual finding that a significant part of Aguiar's scheme occurred in Brazil does not amount to clear error. See id. at 762. Accordingly, we affirm.

AFFIRMED.[3]

---

[3] Aguiar's request for oral argument is DENIED.