[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-12104

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellant-
Cross Appellee,

*versus*

JENNIFER DERAMUS,
a.k.a. Jennifer Slaughter,

Defendant-Appellee-
Cross Appellant.

_____

Appeals from the United States District Court
for the Northern District of Georgia

D.C. Docket No. 1:20-cr-00220-SDG-RDC-2

———————————————

Before WILSON, ROSENBAUM, and ABUDU, Circuit Judges.

PER CURIAM:

The United States appeals Jennifer Deramus's 60-month total sentence, which the district court sua sponte reduced after the original sentencing hearing. Deramus cross-appeals, challenging the imposition of the obstruction of justice enhancement at the original sentencing hearing and the court's failure to grant her safety-valve relief under U.S.S.G. § 5C1.2.

After careful review, and with the benefit of oral argument, we find that the district court erred in conducting a resentencing hearing because the application of the obstruction of justice enhancement was arguable error, and not clear error. Further, we find that the district court did not err in imposing the obstruction of justice enhancement or denying safety-valve relief. Thus, we vacate and remand to the district court with instructions to reinstate the original sentence, and we affirm the district court's application of both the obstruction of justice enhancement and denial of safety-valve relief.

## I.    Background

In the Northern District of Georgia, a grand jury indicted Deramus for conspiring with Julius Stoudemire, her co-defendant,[1] to possess with intent to distribute at least five grams of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(B) (Count I); possession with intent to distribute at least five grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(B) (Count II); providing Stoudemire, a federal inmate in United States Penitentiary (USP) Atlanta, with a prohibited object (methamphetamine), in violation of 18 U.S.C. § 1791 (Count III); aiding and abetting Stoudemire in attempting to obtain a prohibited object (methamphetamine), in violation of 18 U.S.C. § 1791 (Count IV); and making a false statement on BOP Form BP-A0224, by stating she possessed nothing that posed a threat to the institution, when she did possess methamphetamine, in violation of 18 U.S.C. § 1001(a)(3) (Count V).  The case went to a jury trial.

The following evidence was introduced at trial.  Deramus, a correctional officer at the time, was in a relationship with Stoudemire.  Deramus visited Stoudemire at USP Atlanta often, usually every two weeks, visiting both on Saturdays and Sundays.  When Deramus entered the federal facility, she had to sign BOP

---

[1] Prior to trial, Stoudemire pleaded guilty to attempt to obtain a prohibited object as a federal inmate under 18 U.S.C. §§ 1791(a)(2), (b)(1).

Form BP-A0224, indicating that she did not have any contraband on her.[2]

The weekend of June 1, 2019, Deramus visited Stoudemire on both Saturday and Sunday.  Nothing out of the ordinary occurred on the Saturday visit.

On Sunday, Deramus went through security without issue and met Stoudemire in the visitation room.  According to Deramus, around noon she went to the women's restroom (only used by visitors) where she encountered a woman who pushed a package wrapped in paper towels into Deramus's hand, saying that "My man said that your man said to take this and put it on the table." The woman stated that a guard would pick it up and put it in the trash, which would ultimately allow the package to be smuggled out of the room by the guard.  Deramus exited the women's restroom and sat back at her spot in the visitation room.  She placed the package wrapped in paper towels on the side table, out of view of the cameras.  Stoudemire returned from the inmates' restroom. Surveillance video and testimony from Bureau of Prisons (BOP) Officer Michael Diah explained that Deramus and Stoudemire were not speaking with each other but were looking around the room and passing a bag of chips back and forth—a known way to move contraband to an inmate.  Officer Diah also testified that Deramus looked calm after she exited the bathroom and gave no

---

[2] When entering the facility, Deramus put cash, her ID, and a debit card in a clear plastic bag, which went through an X-ray machine.  She also walked through a metal detector.

indication that anything out of the ordinary occurred in the bathroom.

Officer Diah asked Officer Lavell Monroig to investigate. Officer Monroig asked for the package and Deramus gave it to him. The package was half of a travel toothbrush holder that contained a green leafy substance identified as marijuana and white crystal-like substance identified as methamphetamine. The toothbrush holder was wrapped in one layer of plastic wrap material, one layer of clothlike material, and another plastic-type layer. The package was not tested for DNA or fingerprints.

After confiscating the package, Officer Rasheeda Taylor-Cobb came to the visitation room to escort Deramus out of the facility. Deramus told Officer Taylor-Cobb that a woman came up to Deramus and gave her a package, providing a generic description. Officer Taylor-Cobb asked Deramus to identify this woman in the visitation room, but Deramus said the woman was gone. However, Officer Taylor-Cobb said that no one is allowed to leave the visitation room without an escort, and she escorted no one before taking Deramus out. Officer Taylor-Cobb explained that officers normally do not escort people out individually but wait for a larger group before escorting everyone out.

Because of Deramus's job as a correctional officer, the government elicited testimony about Deramus's knowledge regarding contraband in prisons and her continuous training to know warning signs for contraband. Deramus testified at trial, saying she was not thinking when the woman pushed the package into her hand

and she did not know what was in the package, but she knew it was a prohibited object.  Deramus testified that she panicked and was anxious when this incident occurred, detailing her increased heart rate and change in breathing.

At the government's request, the district court gave a deliberate ignorance instruction[3] as well as an actual knowledge instruction.  The jury convicted Deramus on Counts I–IV but acquitted her on Count V.

The Probation Office prepared a presentence investigation report (PSI).  Stoudemire was interviewed for the PSI, and he said that an unknown, unidentified woman approached him when Deramus went to the restroom.  Stoudemire explained that the woman went into the restroom and came out before Deramus.  Ultimately, the PSI calculated Deramus's total offense level of 28.  Relevant to this appeal, that offense level included a 2-level enhancement for obstruction of justice.  With a criminal history of I and total offense level of 28, the proposed guideline range was 78 to 97 months' imprisonment.

The district court held the sentencing hearing on May 9, 2022.  Deramus objected to the obstruction of justice enhancement

---

[3] The instruction stated: "'Deliberate avoidance of positive knowledge' - which is the equivalent of knowledge - occurs, for example, if a defendant possesses a package and believes it contains a prohibited object but deliberately avoids learning that it contains the prohibited object so that she can deny knowledge of the package's contents."

and sought safety-valve relief.[4]  The court found that Deramus had not been truthful in her testimony and that the jury's verdict supported Deramus being untruthful.  The court explained:

> Okay.  Well, I'm going to overrule the objection on the obstruction enhancement.
>
> By the way, I should have said at the outset I did review the parties' sentencing memoranda on all of these objections.  So I've considered all of those arguments, both that were submitted as part of the sentencing memo, as well as what was argued today.  I agree with the government that, number one, defendant's testimony at trial could not have been believed by the jury, considering their verdict.  Given that she denied the contents of -- having no knowledge of the contents of the package is inconsistent with the verdict and the jury instructions, including the deliberate ignorance instruction, because that is part of the knowledge instruction they were given, her disclaiming any knowledge of the contents of the package was necessarily not believed by the jury in its convictions on Counts One through Four.
>
> Also, the fact that she attempted to absolve Mr. Stoudemire and the defendant's narrative that this was going to be picked up by the guards and not by Mr. Stoudemire was also rejected by the jury's verdict.  Those two points, among the others referenced in the

---

[4] Deramus also sought a minor role reduction, which the district court denied. Deramus does not appeal that determination.

government's sentencing memo, all of which I adopt in terms of the testimony -- the specific testimony that is cited on Pages 2 and 3 of the government's sentencing memo all demonstrate that the jury's verdict necessarily found that the defendant was lying. Couple that with the fact that, as was pointed out, I presided over the trial myself, I closely observed the defendant's testimony and I believed that she was being untruthful on these points it was simply a narrative -- my conclusion was that her narrative was intended to try to square with the evidence that had been presented by the government during its case in chief. It was a story that was tailored to try to fit with the evidence that the jury had heard and it, in my view, in my experience both on the bench and formerly as a trial attorney was simply not believable and not credible and so I overruled the objection on the obstruction.

As to the safety-valve relief, the parties agreed that Deramus met the first four criteria. The only criterion at issue was whether Deramus truthfully provided all information and evidence to the government relevant to the offense. The district court declined to apply the safety-valve relief because Deramus's testimony was not truthful. Deramus was sentenced to 70 months' imprisonment, a term that fell below the guideline range.

A few days after the sentencing hearing, the court reached out to the parties to set another sentencing hearing. At the resentencing hearing on May 18, 2022, the government raised its

opposition because there was no clear error under Federal Rule of Criminal Procedure 35(a) to warrant a resentencing. But the district court believed a clear error was made because it was a question of "whether the sentencing guideline application [on the obstruction of justice enhancement had] been correctly applied."

The court then turned to the obstruction of justice enhancement. The court found that the government had not met its burden that any of Deramus's testimony was materially false, but still doubted the credibility of Deramus's testimony. The court again denied safety-valve relief because her testimony was largely about her own role, which was insufficient. Without the obstruction enhancement, the revised guideline range was 63 to 78 months' imprisonment. Deramus was sentenced to 60 months' imprisonment. The United States timely appealed, and Deramus timely cross-appealed.

## II.    Standard of Review

"We review *de novo* legal questions concerning the Federal Rules of Criminal Procedure." *United States v. Spears*, 443 F.3d 1358, 1361 (11th Cir. 2006) (per curiam); *see also United States v. Lett*, 483 F.3d 782, 791 (11th Cir. 2007) (reviewing a Rule 35(a) resentencing de novo).

"We review the interpretation and application of the Guidelines *de novo* and factual findings for clear error." *United States v. Mancilla-Ibarra*, 947 F.3d 1343, 1349–52 (11th Cir. 2020) (reviewing denial of safety-valve relief); *see also United States v. Singer*, 963 F.3d 1144, 1163–67 (11th Cir. 2020) (reviewing an application of

obstruction of justice enhancement).  Under the clear error standard, we defer to the district court's factual finding unless it is not plausible in light of the record, and we are left with the "definite and firm conviction that the court made a mistake." *United States v. Matthews*, 3 F.4th 1286, 1289 (11th Cir. 2021).  We afford "great deference to the district court's credibility determinations," *United States v. Singh*, 291 F.3d 756, 763 (11th Cir. 2002) (quotations omitted), because they tend to require the district court make "a particularized assessment of the credibility or demeanor of the defendant," *United States v. Williams*, 340 F.3d 1231, 1241 (11th Cir. 2003).

## III.    Analysis

The United States argues that the district court exceeded its authority under Federal Rule of Criminal Procedure 35(a) in holding a resentencing hearing.  Deramus cross-appeals, arguing that the district court erred in imposing the obstruction of justice enhancement at the original sentencing hearing and the court's failure to grant her safety-valve relief at both the original sentencing and the resentencing hearings.

Because the obstruction of justice enhancement was the district court's reason for the resentencing hearing under Rule of Criminal Procedure 35(a), we first address whether it was error to apply the obstruction of justice enhancement at the original sentencing hearing.  Then, we discuss whether the resentencing was error.  Finally, we address Deramus's arguments on safety-valve relief.

### A.    Obstruction of Justice Enhancement

For the obstruction of justice enhancement under U.S.S.G. § 3C1.1, the Sentencing Guidelines provide:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

A defendant may obstruct or impede justice by "committing, suborning, or attempting to suborn perjury." U.S.S.G. § 3C1.1, cmt. n.4(B). The Supreme Court has defined perjury as "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan,* 507 U.S. 87, 94 (1993). Material in this context "means evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1, cmt. n.6. "[W]hen a defendant objects to an obstruction enhancement resulting from his trial testimony, 'a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same.'" *United States v. Stahlman*, 934 F.3d 1199, 1227 (11th Cir. 2019) (quoting *Dunnigan*, 507 U.S. at 95).

In its sentencing memorandum, the government provided five specific instances where Deramus gave false testimony:

> (1) disclaimed knowledge of the contents of the package and testified that she did not think it contained drugs; (2) testified that she did not see what the package looked like because it was in paper towels; (3) testified that she thought the package was intended for a guard to pick up and put in the trash; (4) testified that she took the package because she panicked and was not thinking; and (5) testified that she did not touch the package after she set it on the table and did not attempt to pass it to Stoudemire.

At the sentencing, the district court discussed the first and third instances of Deramus's testimony to support its application of the enhancement but adopted the remaining parts from the sentencing memorandum.

Deramus asserts that the obstruction of justice enhancement was improper because she did not lie about not knowing the package contained drugs. Rather, she claims that she was deliberately indifferent from finding out what type of contraband was in the package. Deramus asserts that based on the split jury verdict, the jury thought that she stuck her head in the sand because she should have known she received contraband based on her experience as a correctional officer. We have no binding case law about how our court should decide the obstruction of justice enhancement when a defendant testifies and there is a deliberate ignorance instruction given to the jury.

We need not address this issue because upon review of the record, it is plausible for the district court to impose the obstruction of justice enhancement.[5] Deramus testified about her emotional state at the time of the offense, specifically that she panicked and was not thinking when she received the package. But the video evidence at trial clearly shows that Deramus was not panicked when she came back from the restroom. Instead, she appeared calm and waited for Stoudemire to come back from the restroom, and Officer Diah also explained that Deramus appeared calm, not panicked.

The district court explained that Deramus crafted a narrative "that was tailored to try to fit with the evidence that the jury had heard." Because we afford substantial deference to the district court's determination, as it observed the evidence and Deramus at trial, this court should hesitate to disregard that determination. *Singh*, 291 F.3d at 763. This is particularly salient for the court's difficulty believing Deramus's testimony about an unknown woman because (1) the unknown woman was never identified, nor (2) was it plausible for the woman to have left the room without an

---

[5] We do note that the finding that Deramus testified falsely about the guard picking up the contraband to throw off suspicion is clearly erroneous. Deramus was very clear in her trial testimony about the guard always being the one to pick it up, and Deramus testified that was likely the only way contraband could get out of the visitor room because the prisoners are searched after they leave. So Deramus's testimony was not false about the guard picking up the trash as a means to get the contraband out of the room. Her testimony does not say that it was never intended for Stoudemire, but only a discussion as to how to get the contraband out of the visitor's room.

escort.  Her testimony about the woman in the bathroom was ma-
terial for the obstruction enhancement because it was "designed to
substantially affect the outcome of the case."  *See Dunnigan*, 507
U.S. at 95.

Thus, the court did not clearly err in finding that Deramus
obstructed justice by providing false testimony, given the conflict-
ing evidence and the implausibility of her story.

### B.        Resentencing Hearing

Now that we have determined that the district court's appli-
cation of the obstruction of justice enhancement was plausible in
light of the record, we address the United States' argument that the
district court exceeded its authority under Federal Rule of Criminal
Procedure 35(a) in holding a resentencing hearing.  The govern-
ment asserts that a court's doubt about matters as to which it exer-
cised its discretion does not establish clear error.

A district court may modify a sentence after imposing it only
to the extent permitted by statute or Rule 35.    18 U.S.C.
§ 3582(c)(1)(B).  Rule 35(a) states that, within 14 days of sentencing,
"the court may correct a sentence that resulted from arithmetical,
technical, or other clear error."  Fed. R. Crim. P. 35(a).  While not
binding, the advisory committee notes to Rule 35(a) indicate that
the court's authority to modify a sentence is:

> intended to be very narrow and to extend only to
> those cases in which an obvious error or mistake has
> occurred in the sentence, that is, errors which would
> almost certainly result in a remand of the case to the

> trial court for further action . . . . [It] is not intended
> to afford the court the opportunity to reconsider the
> application or interpretation of the sentencing guide-
> lines or for the court simply to change its mind about
> the appropriateness of the sentence.

Fed. R. Crim. P. 35 advisory committee's note to 1991 amendment. Rule 35 is not meant to be "used to reopen issues previously resolved at the sentencing hearing through the exercise of the court's discretion with regard to the application of the sentencing guidelines." *Id.*

For Rule 35(a), any error must be of the "acknowledged and obvious type, the kind that would 'almost certainly result in a remand of the case to the trial court for further action'" and not an arguable error. *Lett*, 483 F.3d at 789 (quoting Fed. R. Crim. P. 35 advisory committee's note to 1991 amendment); *see also United States v. Yost*, 185 F.3d 1178, 1180–81 (11th Cir. 1999) (affirming district court's resentencing when it used the wrong guideline to determine the defendant's original sentence). Rule 35(a) does not apply when there is no binding precedent on point and reasonable people could differ about the resolution of the matter. *Lett*, 483 F.3d at 790–91.

As discussed above, there is no binding case law from this circuit on how we should decide the obstruction of justice enhancement when a defendant testifies and there is a deliberate ignorance instruction given to the jury. Accordingly, whether to apply the obstruction of justice enhancement was only arguable error, and

not clear error.[6]  Under *Lett*, there is no "clear error" for Rule 35 purposes where "[r]easonable arguments can be made on both sides." 483 F.3d at 789 (explaining that reasonable arguments could have been made about the mandatory minimum issue, thereby precluding clear error).  Reasonable factfinders could differ in determining whether Deramus's testimony was false in light of the court's deliberate ignorance instruction.  *See Lett*, 483 F.3d at 790–91.

The application of the obstruction of justice enhancement is within the discretion of the district court, and there are reasonable arguments for and against the enhancement here.  Because there are reasonable arguments on both sides and the application of the enhancement is discretionary, the district court erred in conducting a resentencing hearing.

### C.      Safety-Valve Relief

Lastly, we review whether the district court erred in denying Deramus safety-valve relief at the original sentencing.

Under the safety-valve provision, the court may impose a sentence regardless of the statutory minimum sentence if the

---

[6] Deramus's argument that the trial court should be faulted for failing to review the trial transcript lacks merit.  This court has refused to require that district judges read the trial transcripts before sentencing, even when the district judge did not preside over the original trial.  *See United States v. Caraza*, 843 F.2d 432, 437 (11th Cir. 1988) (per curiam).  Here, the same judge presided over the trial then sentenced Deramus, thereby having intimate familiarity with Deramus's case.

following criteria are met: (1) the defendant has no more than four criminal-history points; (2) the defendant did not use violence, threats of violence, or possess a firearm or other dangerous weapon in connection with the offense; (3) the offense did not result in death or serious bodily injury; (4) the defendant was not a leader or supervisor; and (5) no later than the time of sentencing, the defendant truthfully provided all information and evidence to the government relevant to the offense. U.S.S.G. § 5C1.2(a)(1)–(5). The last factor is "a 'tell-*all*' provision: to meet its requirements, the defendant has an affirmative responsibility to truthfully disclose to the government all information and evidence that [she] has about the offense and all relevant conduct." *United States v. Johnson*, 375 F.3d 1300, 1302 (11th Cir. 2004) (per curiam) (internal quotations omitted). The defendant bears the burden "to show that [she] has met all of the safety valve factors." *Id.*

The district court properly denied safety-valve relief because Deramus did not testify truthfully at the trial. She relied on nothing else for safety-valve relief except her testimony, which the district court correctly found to be false. To receive safety-valve relief, Deramus had to testify truthfully, and because she failed to do that, she failed to meet her burden. *See id.*

## IV. Conclusion

The district court erred in conducting a resentencing hearing because the application of the obstruction of justice enhancement was arguable error and not clear error. The district court did not err in imposing the obstruction of justice enhancement or

denying safety-valve relief.  Thus, we vacate and remand to the district court with instructions to reinstate the original sentence, and we affirm the district court's application of the obstruction of justice enhancement and denial of safety-valve relief.

**VACATED and REMANDED.**