**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Thomas Richard HENRY,**
**Defendant–Appellant.**

**No. 89–8688.**

United States Court of Appeals,
Eleventh Circuit.

Jan. 10, 1991.

David A. Handley, Matthew S. Coles, Atlanta, Ga., for defendant-appellant.

William L. McKinnon, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

---

Before ANDERSON and EDMONDSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

ANDERSON, Circuit Judge:

Appellant Thomas Richard Henry and his wife, Gloria M. Henry, were indicted in 1987 for possession of stolen mail in violation of 18 U.S.C. § 1708, conspiracy to fraudulently use stolen credit cards in violation of 18 U.S.C. § 1029(b)(2), and fraudulent use of stolen credit cards in violation of 18 U.S.C. § 1029(a)(2). Mrs. Henry entered a plea of guilty and is not involved in this appeal. Mr. Henry was convicted on all three counts after a jury trial. In this appeal, appellant challenges the sufficiency of the evidence on count one, possession of stolen mail, and on count two, the conspiracy count. We find that the evidence was sufficient on both counts and we therefore affirm appellant's convictions.

## I. FACTS

After Eric and Martha Fernwood of Kennesaw, Georgia failed to receive VISA credit cards to replace cards set to expire at the end of May, 1986, an investigation revealed that the replacement cards had been used 240 times between May 17 and May 28, 1986. Although the Fernwoods had always in past years received their replacement cards through the mail at the same address, it is undisputed that the Fernwoods never received the replacement cards at issue. Moreover, they testified that they had not authorized anyone else to receive or use their credit cards. The Fernwoods had their VISA account with the South-Trust Bank of Alabama, headquartered in Birmingham, Alabama. The bank's regular practice was to place all replacement cards for customers whose cards were due to expire at the end of the month in the United States Mail on the fifteenth day of that month. Pursuant to this practice, bank security officers would have delivered a "vanload" of replacement cards to the downtown Birmingham post office on May

15, 1986. The bank kept a log of credit cards that were taken out of the ordinary processing channels; the instant credit cards were not registered in that log. The bank official whose testimony described the bank procedures acknowledged as an abstract proposition that normal procedures are not always infallible. The instant cards, which should have been mailed on May 15, 1986 pursuant to the bank's procedures, actually showed up two days later in the same general area that they were to be mailed.

In May of 1986, a man attempted to purchase several cartons of cigarettes with the Eric Fernwood VISA card at a Revco drug store in Mableton, Georgia. The clerk called for authorization, discovered that the card had been reported stolen, and received instructions to retain the card. When the clerk refused to return the card, the customer did not protest and simply left the store. The clerk later identified the man as appellant Henry from a photographic lineup.

A similar incident occurred on May 27, 1986 at an Eckerd Drug Store in Stone Mountain, Georgia, where a woman attempted to use the Martha Fernwood VISA card. An assistant manager at Eckerd asked to see photo identification after she learned that the card was reported stolen. The woman stated that her identification was in her car and that she would retrieve it. Instead, she drove away, leaving the credit card at the store. The signature on the credit card slip was later identified as that of Gloria Henry.

Mrs. Henry's signature in the name of Martha Fernwood was also found on a credit card slip used for a purchase at an Atlanta pizza restaurant on May 19, 1986. The restaurant manager identified Mrs. Henry from a photographic lineup as the woman who picked up the pizza. The description of a man in the car with Mrs. Henry roughly fit that of the appellant.

In all, Secret Service Special Agent Ron Brown and SouthTrust Bank Investigator James Bible collected over one hundred credit card slips bearing the fraudulent signatures of Eric and Martha Fernwood. Ex-

perts identified all of these signatures as those of either Thomas or Gloria Henry. In addition, two latent palm prints found on one of the forged credit card slips matched appellant's palm prints.

## II. DISCUSSION

In order to support appellant's conviction for possession of stolen mail in violation of 18 U.S.C. § 1708, the evidence must show beyond a reasonable doubt that: (1) appellant possessed the items alleged to have been stolen from the mail; (2) the items were stolen from the mail; (3) appellant knew the items were stolen; and (4) appellant specifically intended to possess the items unlawfully. *United States v. Dawson*, 608 F.2d 1038, 1039–40 (5th Cir.1979) (citing *United States v. Beechum*, 582 F.2d 898, 910 (5th Cir.1978) (en banc),[1] *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979)). Appellant argues that the government failed to present evidence establishing that the credit cards in question were placed in the mail and thus challenges the sufficiency of the evidence only on the second element above.

In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the government and draw all reasonable inferences in favor of the findings of the trier of fact. We also note that the " 'use of the mails may be established, like most other facts, by circumstantial evidence,' even if the jury might draw other reasonable inferences from the circumstantial evidence." *Smith v. United States*, 343 F.2d 539, 543–44 (5th Cir.), *cert. denied*, 382 U.S. 861, 86 S.Ct. 122, 15 L.Ed.2d 99 (1965) (quoting *Stevens v. United States*, 306 F.2d 834, 836 (5th Cir.1962)). "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982),[2] *aff'd*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

Viewed through the lens of this standard of review, it is clear that the evidence of the credit cards' entry into the postal system is sufficient. There is a strong inference that the credit cards were mailed on May 15, 1986 pursuant to the bank's normal procedures. This inference is reinforced by the evidence that the Fernwoods' replacement credit cards were first used in the Atlanta area on May 17, 1986, two days after they were scheduled to be mailed from Birmingham. The most reasonable inference is that the items reached Atlanta by mail and were not stolen in Birmingham and transported to Atlanta by other means. There is no evidence that the Fernwoods' cards did not follow the normal procedural route. For example, these cards did not appear on the log for cards not mailed or returned to the bank. It is undisputed that the Fernwoods never received their cards.

Many courts have found evidence of routine business mailing practices sufficient to show that certain items were mailed. *See, e.g., United States v. Toliver*, 541 F.2d 958 (2d Cir.1976); *United States v. Matzker*, 473 F.2d 408 (8th Cir.1973); *Smith v. United States*, 343 F.2d 539 (5th Cir.1965). In *United States v. Robertson*, 460 F.2d 1250 (5th Cir.1972),[3] the court found sufficient evidence that a credit card entered the mails where testimony showed that an agent prepared and mailed cards, including the card in question, in the regular course of business, even though the witness did not have specific knowledge as to the particular credit card.[4]

---

1. These cases were decided prior to the close of business on September 30, 1981, and are binding precedent under *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).

2. This former Fifth Circuit case was decided after the close of business on September 30, 1981, and is binding precedent under *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982).

3. This case was decided prior to the close of business on September 30, 1981, and is binding precedent under *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).

4. There was other evidence in *Robertson* supporting the inference that the defendant stole the card from the mail, such as the fact that the defendant operated a letter sorting machine at the post office. There is corroborative evidence

Appellant nevertheless argues that *United States v. Dawson*, 608 F.2d 1038 (5th Cir.1979) supports reversal of his conviction. In *Dawson*, the defendant successfully challenged his convictions on two counts of possessing stolen mail, namely two money orders. The court held that the evidence was insufficient to establish that the money orders were stolen from the mail because, although the parties stipulated due mailing of the money orders, the government did not sufficiently establish nonreceipt. *Id.* at 1040. The evidence showed that the addressee, a Florida drug store, had a procedure whereby the cashier would accept delivery of the mail and then either give it to the manager or pharmacist or place it on the manager's desk. The serial numbers of the money orders received would then be entered in a log. The serial numbers of the money orders at issue were not logged in. The court noted that the sole evidence of non-receipt of the money orders was the fact that the serial numbers were not logged in. There was substantial opportunity for the theft after the money orders were received at the drug store and before same would have been logged in, *e.g.*, after the cashier accepted delivery of the money order while same were sitting on the manager's desk awaiting the logging in procedure. In *Dawson*, it was just as likely that the money orders were stolen after receipt at the drug store as it was that they were stolen from the mail.

In the instant case it is possible that someone stole the credit cards before they were mailed in Birmingham. However, the much stronger inference is that someone stole the cards from the mails. The bank's procedure for handling and mailing the credit cards, though not infallible, was reasonably designed to provide security. In addition, the cards actually showed up in the Atlanta area two days after the scheduled mailing. The inference that the bank's procedures broke down in the instant case such that the cards were not in fact mailed to Atlanta is hardly a reasonable hypothesis in light of the rare coincidence that the cards actually showed up in Atlanta two days after the scheduled mailing. Even if the inference relied upon by appellant does rise to the level of a reasonable hypothesis, it is not necessary that the evidence exclude every reasonable hypothesis of innocence. It is necessary only to conclude that a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. Here, we have no difficulty concluding that the inference relied upon by appellant is not strong enough to mandate a finding that the jury must have entertained a reasonable doubt. In other words, we conclude that a reasonable jury could have found that the evidence established guilt beyond a reasonable doubt.[5]

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

in the instant case as well, such as the presence of the credit cards in Atlanta shortly after the May 15 mailing.

**5.** Appellant's claim that the evidence on the conspiracy count is insufficient is without merit and warrants no discussion.