[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 2, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-16116
Non-Argument Calendar

_____

D. C. Docket No. 03-20916-CR-UUB

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

AYO ABRAHAM OKHIKU,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(August 2, 2005)**

Before HULL, WILSON  and PRYOR, Circuit Judges.

PER CURIAM:

Ayo Abraham Okhiku appeals his convictions for possession of 15 or more

unauthorized access devices, and possession of stolen mail. See 18 U.S.C. §§ 1029(a)(3) and 1708. Because the district court did not er when it denied Okhiku's motion to suppress, and the evidence presented at trial was sufficient to support his conviction for possession of stolen mail, we affirm.

## I. BACKGROUND

Okhiku and a codefendant were indicted and charged with possession of 15 or more unauthorized access devices (count 1). Okhiku was also charged with using, without lawful authority, a means of identification of another person with intent to commit wire fraud (count 2). Okhiku moved to suppress evidence seized from his apartment. Based on the recommendation of the magistrate judge, the district court denied the motion to suppress.

After Okhiku's codefendant pleaded guilty, a superceding indictment added a third count and charged Okhiku with possession of stolen mail (count 3). Okhiku proceeded to trial, and, after the government rested, Okhiku moved for judgment of acquittal. The district court denied the motion, and Okhiku was convicted by a jury of counts 1 and 3 and acquitted of count 2.

The district court sentenced Okhiku to 37 months of imprisonment on each count, to run concurrently, followed by supervised release for 3 years. The court also ordered Okhiku to pay restitution in the amount of $8, 601.50 to the victims of

his crimes.  Okhiku appeals his convictions.

## II. DISCUSSION

Okhiku makes two arguments on appeal.  He first contends that the district court erred when it denied his motion to suppress because he did not voluntarily consent to a search of his apartment.  Okhiku also argues that the evidence presented at trial was insufficient to support his conviction for possession of stolen mail.  We address each argument in turn.

### A.  Motion to Suppress

Because "rulings on motions to suppress involve mixed questions of fact and law, the district court's factual findings are reviewed under the clearly erroneous standard, while that court's application of the law is subject to de novo review." United States v. Ramos, 12 F.3d 1019, 1022 (11th Cir. 1994) (citation omitted). "When considering a ruling on a motion to suppress, the court must construe all facts in the light most favorable to the party prevailing in the district court." United States v. Mikell, 102 F.3d 470, 474 (11th Cir. 1996).  The question we must consider is whether the district court clearly erred when it found that Okhiku voluntarily consented to the search of his apartment.

Although "searches undertaken without a warrant issued upon probable cause are per se unreasonable," United States v. Alexander, 835 F.2d 1406, 1408

(11th Cir. 1988) (quotations omitted), law enforcement officers may conduct a search without a warrant if they first obtain voluntary consent to the search. United States v. Blake, 888 F.2d 795, 798 (11th Cir. 1989). Voluntary consent is "the product of an essentially free and unconstrained choice." United States v. Garcia, 890 F.2d 355, 360 (11th Cir. 1989). To determine whether consent was freely given, this Court must scrutinize the facts and balance the suspect's right to be free from coercive conduct and the legitimate need of the government to conduct lawful searches. Id. Although not dispositive, the following several factors are relevant in determining voluntariness: (1) the voluntariness of the defendant's custodial status, (2) the presence of coercive police procedure, (3) the extent and level of the defendant's cooperation with police, (4) the defendant's awareness of his right to refuse to consent to the search, (5) the defendant's education and intelligence, and (6) the defendant's belief that no incriminating evidence will be found. United States v. Chemaly, 741 F.2d 1346, 1352 (11th Cir. 1984).

Exceptionally clear evidence is required to establish consent. United States v. Lopez-Pages, 767 F.2d 776, 779 (11th Cir. 1985). The government bears the burden of proving both the existence of consent and that the consent was not a function of acquiescence to a claim of lawful authority, but was given freely and

4

voluntarily.  United States v. Blake, 888 F.2d 795, 798 (11th Cir. 1989).  The government is not required to prove that the suspect was aware of the right to refuse consent.  Chemaly, 741 F.2d at 1353.

There are two reasons that the district court did not clearly err when it determined that Okhiku voluntarily consented to a search of his apartment.   First, the magistrate judge found, and the district court agreed, that the testimony of the government agents that Okhiku verbally consented to the search of his apartment was more credible than Okhiku's version of the events.  Such a credibility finding is within the province of the fact-finder.  United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir.2002).  The testimony of both agents was substantially consistent, and both testified that they did not enter Okhiku's apartment or begin the search until Okhiku granted them oral permission to search.  Nothing in the record undermines the veracity of the agents' testimony, other than Okhiku's self-serving recollection of the events.

Second, the record suggests that there was nothing inherently coercive about the search.  Although Okhiku alleged that he was placed in handcuffs when the agents searched his apartment, the district court found his testimony incredible.  On the other hand, the credible testimony of the agents established that Okhiku was not touched or restrained in any way, and none of the officers unholstered their

weapons. The record clearly supports the finding that the consent granted by Okhiku was the product of a free and unconstrained choice and not the result of allegedly coercive tactics employed by the law enforcement agents.

*B. Sufficiency of the Evidence*

Okhiku concedes that mail addressed to persons other than himself was found in his apartment, but argues that the evidence at trial was insufficient to show that the credit cards were stolen from the mail or that he knew the mail in his possession was stolen. Whether the evidence presented at trial is sufficient to support the criminal conviction is a question of law subject to de novo review. United States v. Diaz, 248 F.3d 1065, 1084 (11th Cir. 2001). "The evidence is viewed in the light most favorable to the government and all reasonable inferences and credibility choices are made in the government's favor." Id.

To support a conviction for possession of stolen mail, "the evidence must show beyond a reasonable doubt that: (1) appellant possessed the items alleged to have been stolen from the mail; (2) the items were stolen from the mail; (3) appellant knew the items were stolen; and (4) appellant specifically intended to possess the items unlawfully." United States v. Henry, 920 F.2d 875, 877 (11th Cir. 1991). The "use of the mails may be established, like most other facts, by circumstantial evidence, even if the jury might draw other reasonable inferences

6

from the circumstantial evidence." Id. at 877 (quotations and citation omitted).

Okhiku argues that the government did not establish beyond a reasonable doubt that the items were stolen from the mail and that Okhiku knew that they were stolen. We disagree. The record shows that Okhiku possessed a significant amount of postal materials that were addressed to persons other than himself. His codefendant testified that Okhiku had access to all the mailboxes at the apartment complex and often retrieved mail that did not have his name on it. Based on this circumstantial evidence, the jury could have drawn a reasonable inference that the items found in Okhiku's possession were stolen from the mail.

As to whether Okhiku knew the mail was stolen, a "jury is entitled to infer that, absent a satisfactory explanation, a person who possesses [mail] which has been recently stolen has knowledge of the stolen character." United States v. Sanders, 639 F.2d 268, 270 (5th Cir. Mar. 12, 1981) (citation omitted). The quantity of postal evidence addressed to other individuals in Okhiku's apartment supports a conclusion that the mail was stolen and that Okhiku knew it was stolen. The jury could have drawn a reasonable inference that Okhiku knew the mail was stolen. The district court, therefore, did not err when it denied Okhiku's motion for judgment of acquittal.

## III. CONCLUSION

Because the district court did not er when it denied Okhiku's motion to suppress, and the evidence presented at trial was sufficient to support his conviction for possession of stolen mail, we affirm Okhiku's convictions for possession of 15 or more unauthorized access devices, and possession of stolen mail.

**AFFIRMED**.