[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-16109
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 25, 2012
JOHN LEY
CLERK

D.C. Docket No. 0:10-cr-60170-JIC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KERRY ANN WALTERS-RICKETTS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 25, 2012)

Before HULL, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Kerry Ann Walters-Ricketts ("Ricketts") appeals her convictions and her

total 90-month sentence after being convicted by a jury of importing cocaine, in violation of 21 U.S.C. § 952(a) (Count 1), and possessing with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count 2). Ricketts raises three main arguments on appeal. First, she contends that the district court violated Federal Rule of Evidence 404(b) by admitting evidence that she sat next to a known drug dealer during two flights between the United States and Jamaica. Second, she argues that the government presented insufficient evidence at trial to prove that she knew about the cocaine concealed in her handbag. Finally, she asserts that the district court erred by giving her a two-level guideline enhancement for obstruction of justice. For the reasons set forth below, we affirm.

## I. FACTS

At Ricketts's trial, the government introduced the testimonies of several law enforcement agents, revealing the following facts. Federal agents received information from a confidential informant, Wendell Hamilton, that Ricketts might be carrying drugs on a flight from Jamaica to the United States on April 29, 2010. Upon Ricketts's arrival at the airport, agents searched her luggage and discovered approximately one kilogram of cocaine concealed inside the lining of her handbag. Ricketts gave the agents differing versions of how she came to possess the handbag. She first told them that, toward the end of her stay in Jamaica, she went

to an outdoor craft market where a vendor expressed a desire to purchase her imitation Louis Vuitton bag. Ricketts agreed to sell the bag, and the vendor gave her a brown handbag for her personal belongings. Ricketts carried the handbag on her trip to the Unites States, not knowing that anything was concealed inside. The day after her initial detention, however, Ricketts told the agents that, while in Jamaica, she met two individuals, Kenrick and Junior. She was at the craft market with Kenrick and saw him and Junior discuss something with the vendor. Kenrick then brought Ricketts to the vendor, and the vendor passed a handbag to Ricketts. The bag felt heavy, and Ricketts asked Kenrick if everything was okay with it. Kenrick assured her that there was nothing illegal about the bag, and Ricketts thought there might have been something inside, like currency. Kenrick told her that she would receive a phone call and instructions regarding the bag when she returned to the United States.

The government further introduced the testimony of Hamilton, the informant. Hamilton testified that he became friends with an individual named Andre Holland, who offered him an opportunity to smuggle drugs. Hamilton regularly visited Holland's apartment on the weekends and saw Ricketts there on several occasions. At one point, Hamilton, Holland, and Ricketts discussed various ways in which Hamilton could smuggle drugs into the United States from

3

Jamaica. Ricketts mentioned several contacts in Jamaica who would provide the drugs, including her two cousins. When Hamilton went to Jamaica on a smuggling trip, he met Ricketts's cousins, and they gave him pellets of cocaine to swallow. Hamilton stated that Ricketts would recruit people in Jamaica for the drug smuggling operation and that Holland would sell the drugs.

As the last witness, the government called Jacqueline Gayle, a custodian of records for Air Jamaica. Gayle testified that Ricketts made 28 flights (14 round trips) to and from Jamaica between 2006 and April 2010. On April 3, 2010, Ricketts purchased a ticket to travel to Jamaica between April 22nd and 29th. Through Gayle's testimony, the government introduced several flight manifests that detailed the passengers' names and seat assignments on flights taken by Ricketts. Two of the flight manifests showed that Holland and Ricketts had assigned seats close to each other on two Air Jamaica flights that occurred on August 11, 2009, and January 8, 2010, respectively.

Ricketts objected to the flight manifests containing Holland's name. She argued that the government was attempting to "smear" her by associating her with a major drug dealer and implying that she was involved in drug trafficking on dates not charged in the indictment. The government responded that the evidence corroborated Hamilton's testimony by showing that Ricketts was involved in drug

4

trafficking.

The district court overruled Ricketts's objection, finding that the flight manifests were probative because they corroborated Hamilton's testimony by showing a relationship or a potential relationship between Ricketts and Holland. The court also found that the prejudicial effect of this evidence did not substantially outweigh its probative value.

After the government rested, Ricketts herself took the stand. She testified that she took many flights to Jamaica because she was from Jamaica and many of her family members and friends lived in that country. Ricketts indicated that the purpose of her latest visit to Jamaica was to attend her husband's uncle's funeral. Her husband did not go to the funeral because his passport expired and he had trouble renewing it due to an incorrect spelling on his birth certificate. Ricketts stated that she did not bring any documentation to prove that her husband intended to attend the funeral because she did not think this information was relevant to her case.

Ricketts testified that, toward the end of her stay in Jamaica on April 29, 2010, she went to a craft market to meet Kenrick, her acquaintance. She did not know that Kenrick was involved in drug activity, and he never asked her to carry drugs. Kenrick had a friend who worked at the market, and the friend asked

Ricketts for her imitation Louis Vuitton bag. Ricketts agreed to sell the bag, but told the friend that she had nowhere to put her things. The friend told Ricketts not to worry and gave her a brown handbag that was brand new with a tag still attached. Ricketts did not notice anything suspicious about the bag and placed her things in it.

Ricketts further testified that she met Holland in June 2009 and talked to him occasionally. She and Holland never discussed drugs, drug smuggling, or Hamilton, and she did not volunteer to smuggle drugs for Holland. Ricketts stated that she did not know Holland was a drug dealer. After Ricketts's testimony, the defense rested and moved for acquittal, but the district court denied the motion. The jury ultimately convicted her on both counts.

A probation officer prepared the presentence investigation report ("PSI") and calculated Ricketts's guideline range. The officer set her base offense level at 26, pursuant to U.S.S.G. § 2D1.1(c), and did not add any enhancements or reductions. Because Ricketts had no prior convictions, she was placed into criminal history category I, which, combined with the offense level of 26, generated a guideline range of 63 to 78 months' imprisonment.

The government filed an objection to the PSI, arguing that Ricketts should receive a two-level enhancement for obstruction of justice, pursuant to U.S.S.G.

§ 3C1.1. At the sentencing hearing, the district court agreed with the government and applied the two-level enhancement, finding that Ricketts willfully attempted to obstruct justice by committing perjury. The court explained, among other things, that Ricketts lied about the purpose of her latest trip to Jamaica and provided an implausible explanation for why her husband did not accompany her to his uncle's funeral. The court noted that Ricketts purchased her plane ticket 19 days in advance of the funeral. The court also found that Ricketts lied when she stated that she did not know that Holland was a drug dealer.

With the two-level enhancement, Ricketts's offense level became 28, which, combined with a criminal history category of I, yielded a guideline range of 78 to 97 months in prison. The court ultimately sentenced her to 90 months' imprisonment on each count, to be served concurrently.

## II. ANALYSIS

### A. Evidentiary Ruling

We review the district court's evidentiary rulings for abuse of discretion. *United States v. McGarity*, 669 F.3d 1218, 1232 (11th Cir. 2012). Rule 404(b) provides that evidence of "a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," although such evidence may be admissible "for

another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed.R.Evid. 404(b).

Rule 404(b) does not apply to evidence that is "(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007) (quotation omitted). Moreover, "[e]vidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive, and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." *Id.* (quotation and alteration omitted). Whether or not the evidence of uncharged activity lies within the scope of Rule 404(b), it must satisfy the requirements of Rule 403.[1] *Id.*

In this case, evidence that Ricketts sat near Holland on two flights between

---

[1] Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403.

the United States and Jamaica fell outside the scope of Rule 404(b) because it served to explain "the context, motive, and set-up of the crime," and formed "an integral and natural part" of the account of the crime. *See id.* The main contested issue at trial was whether Ricketts knew about the cocaine hidden in her handbag. The government's primary evidence regarding this issue came through Hamilton, who testified, essentially, that Ricketts and Holland were together involved in a conspiracy to smuggle drugs from Jamaica into the United States. The seat-assignment evidence corroborated Hamilton's testimony by showing a connection between Ricketts and Holland. Evidence of the pair's drug-smuggling conspiracy explained why Ricketts carried cocaine in her handbag on her latest flight from Jamaica on April 29, 2010. In this light, the seat-assignment evidence did not constitute inadmissible extrinsic evidence under Rule 404(b). *See Edouard*, 485 F.3d at 1344.

Furthermore, evidence of the seat assignments did not violate Rule 403. The evidence was probative because it corroborated Hamilton's testimony, which formed an essential part of the government's case. The prejudicial impact of the evidence, however, was minimal, as it showed only that Ricketts sat near Holland during two flights between the United States and Jamaica. Although Ricketts's seating next to a drug dealer may have cast her in a negative light, her association

with Holland was already well established through Hamilton's testimony, which Ricketts does not challenge on appeal. Accordingly, any prejudicial impact of the seat-assignment evidence did not outweigh its probative value, rendering it admissible under Rule 403. *See* Fed.R.Evid. 403; *United States v. Smith*, 459 F.3d 1276, 1295 (11th Cir. 2006) ("[W]e look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." (quotation omitted)). In light of the foregoing, the district court did not abuse its discretion in admitting the evidence of seat assignments. *See Edouard*, 485 F.3d at 1344; *Smith*, 459 F.3d at 1295.

## B. Sufficiency of the Evidence

We review *de novo* the sufficiency of the evidence to support a criminal conviction. *United States v. Frazier*, 605 F.3d 1271, 1278 (11th Cir. 2010). In making this determination, "we view the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor." *Id.* (quotation omitted). In a criminal trial, facts may be proved by circumstantial evidence, "even if the jury might draw other reasonable inferences from the circumstantial evidence." *United States v. Henry*, 920 F.2d 875, 877 (11th Cir. 1991) (quotation omitted). To convict a defendant under 21 U.S.C. §§ 952(a) and 841(a), the government must prove that the defendant

10

knowingly imported and possessed a controlled substance. *United States v. Peart*, 888 F.2d 101, 104 n.2 (11th Cir. 1989).

In this case, the government presented sufficient circumstantial evidence to show, beyond a reasonable doubt, that Ricketts knew about the drugs hidden in her handbag. Hamilton's testimony established that Ricketts, along with Holland, participated in a scheme to smuggle drugs from Jamaica to the United States, thereby raising an inference that Ricketts knowingly smuggled cocaine from Jamaica on April 29, 2010. Hamilton's testimony was supported by evidence that Ricketts took numerous flights to Jamaica within four years, that she sat near Holland on two of the flights, and that her most recent flight with Holland occurred less than four months prior to the instant offense. Moreover, after being arrested at the airport, Ricketts gave differing statements regarding how she came to possess the handbag. *See United States v. Farris*, 77 F.3d 391, 394-95 (11th Cir. 1996) (holding that evidence of a defendant's conflicting statements to law enforcement agents supported his conviction). Finally, Ricketts took the stand and gave a relatively innocent explanation of how she obtained the handbag, but her testimony was not credible, as indicated by the jury's verdict, and this served as additional evidence of her guilt. *See United States v. Jiminez*, 564 F.3d 1280, 1285 (11th Cir. 2009) (holding that a defendant's own testimony supported his

convictions because the jury was permitted to reject that testimony and consider it as substantive evidence of guilt). Thus, the evidence in Ricketts's case was more than sufficient to convict her of importation and possession of cocaine. *See United States v. Quilca-Carpio*, 118 F.3d 719, 720-22 (11th Cir. 1997) (holding that the evidence was sufficient to convict a defendant for importation and possession, where the evidence showed only that the defendant's bag contained about 8.5 pounds of cocaine in a hidden compartment and was unusually heavy).

### C. Enhancement for Obstruction of Justice

In reviewing the district court's imposition of an obstruction-of-justice enhancement, we review the court's factual findings for clear error and its application of those findings to the Guidelines *de novo*. *United States v. Doe*, 661 F.3d 550, 565 (11th Cir. 2011), *cert. denied*, 132 S.Ct. 1648 (2012). Section 3C1.1 of the Guidelines provides for a two-level enhancement for defendants who have "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1. A defendant may obstruct justice by committing perjury, which is defined as "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v.*

12

*Singh*, 291 F.3d 756, 763 (11th Cir. 2002) (quotation omitted). In reviewing a district court's finding of perjury, we accord "great deference to the district court's credibility determinations." *Id.* (quotation omitted).

The district court did not clearly err in finding that Ricketts obstructed justice by committing perjury. With regard to the purpose of her latest trip to Jamaica, which ended on April 29, 2010, Ricketts indicated that she went to attend her husband's uncle's funeral. However, as the court noted, she had bought the plane ticket on April 3, 2010, approximately 19 days before commencing the trip. Common knowledge suggests that a funeral usually occurs less than 19 days after a person dies, and, logically, Ricketts would not plan to attend the funeral while the uncle was still alive. We do not deny the possibility that the uncle's burial occurred more than 19 days after his death, but Ricketts failed to produce any evidence to support this version of events, such as a death certificate or affidavit. Moreover, the court had broad discretion not to believe Ricketts's testimony as to why her husband did not attend the funeral. *See Singh*, 291 F.3d at 763. Thus, we cannot say that the district court clearly erred in finding that Ricketts lied about the purpose of her travel. *See United States v. Ndiaye*, 434 F.3d 1270, 1305 (11th Cir. 2006) (stating that a district court's choice between two permissible views of the evidence cannot be clear error).

13

The district court also did not clearly err in finding that Ricketts lied when she attested to having no knowledge of Holland's drug dealing. As described above, Hamilton testified that Ricketts and Holland participated in a scheme to import drugs from Jamaica and that Holland was the one who sold the drugs. Certainly, the district court had broad discretion to believe Hamilton, especially in light of the jury's verdict. *See Singh*, 291 F.3d at 763; *see also United States v. Lawrence*, 972 F.2d 1580, 1583 (11th Cir. 1992) (stating that a court's finding of perjury must be "informed but not dictated by the jury's verdict"). Accordingly, the district court did not clearly err in finding that Ricketts committed perjury, and properly applied the two-level enhancement under § 3C1.1. *See United States v. Vallejo*, 297 F.3d 1154, 1168-69 (11th Cir. 2002) (upholding the obstruction-of-justice enhancement for perjury where the defendant's statements at trial were contradicted by government witnesses). In light of the foregoing, we affirm Ricketts's convictions and sentences.

**AFFIRMED.**