[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-15363

_____

D.C. Docket No. 1:11-cr-20421-CMA-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ISMAEL CRUZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 20, 2013)

Before TJOFLAT, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Ismael Cruz appeals his conviction and his 108-month total sentence after a

jury found him guilty of robbing a Bank of America branch, in violation of 18

U.S.C. § 2113(a), (d), as charged in Count 1 of his indictment.[1]  Cruz raises two main arguments on appeal.  First, he contends that the government presented insufficient evidence at trial to prove that he was the individual who committed the Bank of America robbery.  Second, he argues that the district court imposed a substantively unreasonable sentence by refusing to credit his claim of innocence regarding the Bank of America robbery and to disregard that robbery in calculating his sentence.  For the reasons set forth below, we affirm.

## I.  FACTS

At Cruz's trial, the government introduced evidence showing the following facts.  On December 17, 2010, a man entered a Bank of America branch, approached the bank's assistant manager, Adua Casado, and asked her about opening an account.  The man wore a black, button-down, long-sleeved shirt, black pants, and a baseball hat with the visor facing to the front.  He also wore a dark-colored backpack and carried a plastic bag in his hand.  The left side of the man's face was mostly covered by a white medical eyepatch.  His skin color was that of a Hispanic, and he had a medium-length beard and mustache.  Casado testified that the man was relatively short, about the same height as her, or

---

[1]  Cruz was also indicted for robbing a branch of Wachovia Bank (Count 2).  However, he pleaded guilty to that offense and does not challenge that conviction on appeal.

2

approximately 5'1."

Casado directed the man to the office of Morena Noguel, a personal banker, for assistance. Once inside the office, the man told Noguel that she needed to call her supervisor (Casado) because he had a bomb. When Casado entered, the man opened a shoe-sized box, revealing a device with a digital screen, wrapped in tape. The robber gave Casado a plastic bag and told her to get cash from the teller and put it inside. After Casado left to get the money, the robber demanded the keys to Noguel's car and inquired as to its appearance and location, and Noguel complied with his requests. Meanwhile, Casado collected approximately $42,000 from the tellers and brought the money to the robber. The robber told Casado that he needed time to get to his car and that he would remotely detonate the bomb if she called the police. He then exited the building, leaving the bomb in the office, and escaped in Noguel's car. The Bank of America surveillance video showed the robber as he entered the bank, spent a few seconds next to Casado, and then exited the bank. Both Noguel and Casado testified that they could not identify the robber's face in a photographic line-up shown to them by FBI agents.

After the robbery, law enforcement officers used a remotely controlled robot to assess the bomb left by the robber. The device looked realistic and had all the key characteristics of a real bomb, so the officers assumed that it was real. In fact,

3

a bomb technician with nearly 20 years of experience testified that his first thought upon seeing the bomb was, "Okay.  Wow.  This is a really good device."  He commented to another officer that it was "one of the best devices I had seen in 20 years because it was neatly made.  It was well put together."  The officers eventually dismantled the device using a projectile fired by the robot and discovered that the bomb was fake.

On May 11, 2011, a man walked into a branch of Wachovia Bank and told a banker that he was there for an interview.  The man was short, approximately 5'1", and looked Hispanic.  He had a medical gauze over his left eye and wore black glasses, a baseball cap, a long-sleeved white shirt, a tie, dark pants, and a book bag.  The man was directed to a seating area to wait for the teller manager, Ricsys Toribio.  When Toribio arrived, she and the man proceeded to an office, where he gave her a folder with the word "Resume" written on it.  Toribio opened the folder and saw a writing telling her that she was being robbed, that the man had a weapon pointing at her, and that he wanted $50,000 in $20 bills.  Toribio obtained the requested money and gave it to the robber, whereupon he exited the building.  Toribio identified Cruz as the man who robbed the bank.

The government called as a witness Wellington Diaz, an auto center manager at Sears Holding Company, who had worked with Cruz over several

4

years and saw him on a daily basis. Diaz testified that Cruz suffered from epilepsy and experienced occasional seizures, during which he would fall and injure his face. In 2010, close to the Christmas holidays, Cruz missed work for a few days. As an explanation for missing work, Cruz sent Diaz a picture of himself in the hospital with a bruised left eye and cheek. Diaz testified that, in December 2010, Cruz was scheduled to work from Monday the 12th through Thursday the 16th, but was off work on Friday the 17th, the day of the Bank of America robbery. When FBI agents questioned Diaz about his relationship with Cruz, they showed him two surveillance photos of the robber inside the Bank of America and one photo of the robber exiting Wachovia bank. Diaz recognized the man in all three pictures as Cruz. He testified that he continued to recognize the man in the pictures as Cruz and that he had no doubt whatsoever that the man was, in fact, Cruz.

Finally, the government called Justin Fleck, an FBI agent who investigated the Bank of America robbery. Fleck testified that, despite substantial investigative efforts after the robbery, he could not find a suspect. However, after being assigned to investigate the Wachovia Bank robbery, Fleck immediately concluded that the Wachovia robber was the same one who had robbed the Bank of America. Fleck explained that both robberies were unique in that the robber, instead of

5

proceeding to the teller line, used a ruse or a lie to get an employee into a customer service office. In fact, Fleck had investigated at least 70 bank robberies during his career and had never before seen a robbery where the subject robbed the bank from a customer service office. Moreover, the instant robberies were the only two that he had investigated, or heard of, where the robber wore a white medical patch over his left eye.

Fleck further testified that, after Cruz was arrested, he confessed in detail to committing the Wachovia Bank robbery. Cruz also admitted that, prior to the Wachovia robbery, he had planned to rob a branch of Chase Bank. Specifically, he was going to tell a bank employee that he wanted to open an account, get the employee to take him into an office, and force the employee to get the money and bring it to him, as in the Wachovia robbery. Cruz planned to escape by taking a teller victim hostage, forcing the victim into the victim's car, driving some distance away from the bank, and then forcing the victim out of the car. Cruz actually commenced the planned robbery by entering Chase Bank and talking to an employee, but decided to abort the robbery after seeing two uniformed police officers enter the bank.

Fleck testified that, despite the foregoing confessions, Cruz denied committing the Bank of America robbery. Moreover, although Noguel's car was

6

eventually recovered, and five DNA samples and one viable fingerprint were taken

from the car, neither the DNA samples nor the fingerprint matched Cruz. Fleck

also acknowledged that no books or periodicals regarding the making of bombs or

fake bombs were found in Cruz's apartment. After Fleck's testimony, the

government rested. The defense did not present any evidence and moved for

acquittal, but the district court denied the motion. The jury ultimately returned a

verdict of guilty.

A probation officer compiled the presentence investigation report ("PSI")

and, in calculating Cruz's guideline range, took both robberies into account, which

resulted in a total offense level of 31. Because Cruz had no prior convictions, he

was placed into criminal history category I, which, combined with the offense

level of 31, yielded a guideline range of 108 to 135 months' imprisonment. The

statutory maximum sentence on each count was 25 years in prison, with no

mandatory minimum. *See* 18 U.S.C. § 2113(a), (d).

At sentencing, Cruz argued that he did not commit the Bank of America

robbery. He asserted that, according to the bank's surveillance video, the robber

was taller than Casado, the bank manager who had testified in court. This meant

that Cruz, who was presumably as short or shorter than Casado, could not have

been the robber. Furthermore, the fake bomb used in the robbery was very

7

realistic, as described by the bomb technician, but there was no evidence that Cruz had any kind of experience in bomb-making.  Given that he was innocent of the Bank of America robbery, Cruz asked to be sentenced only for the Wachovia Bank robbery, for which the guideline calculations yielded a range of 51 to 63 months' imprisonment.

The district court rejected Cruz's argument, finding that it could not legally disregard the Bank of America robbery in light of the jury's guilty verdict.  Cruz then asked the court, in the alternative, to impose a total sentence of 108 months, at the bottom of the guideline range as calculated in the PSI.  The court granted Cruz's request and sentenced him to 108 months in prison and 5 years of supervised release on each count, to be served concurrently.

## II.  ANALYSIS

### A.  Sufficiency of the Evidence

We review *de novo* the sufficiency of the evidence to support a criminal conviction.  *United States v. Frazier*, 605 F.3d 1271, 1278 (11th Cir. 2010).  In making this determination, we view the evidence "in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor."  *Id.* (quotation omitted).  In a criminal trial, facts may be proved by circumstantial evidence, "even if the jury might draw other reasonable

8

inferences from the circumstantial evidence." *United States v. Henry*, 920 F.2d 875, 877 (11th Cir. 1991) (quotation omitted).

In this case, the government presented sufficient evidence to show, beyond a reasonable doubt, that Cruz was the one who robbed the Bank of America. Cruz's co-worker, Diaz, identified Cruz as the robber on two surveillance photos taken inside the Bank of America. Although the photographs did not depict the robber's face with perfect clarity, it was reasonable for the jury to conclude that Diaz, who saw Cruz on a daily basis over several years, was capable of recognizing him from those pictures. *Cf. United States v. Pierce*, 136 F.3d 770, 773-75 (11th Cir. 1998) (holding that lay opinion testimony of witnesses was helpful and admissible to identify the defendant as the bank robber depicted in a surveillance photo, as the witnesses were more familiar with the defendant's appearance than the jury).

Furthermore, there were at least two significant similarities between the Bank of America robbery and the Wachovia robbery, to which Cruz confessed and pleaded guilty. In both instances, the robber wore a white medical eyepatch on the left side of his face and conducted the robbery by luring a bank employee into an office and demanding money, rather than directly approaching the teller. Notably, Cruz admitted that he planned to rob Chase Bank by similarly luring an employee

9

into an office.  Agent Fleck testified that, of the approximately 70 robberies that he had investigated during his career, the Wachovia and Bank of America robberies were the only ones where the subject conducted the robbery from a bank office and wore a medical eyepatch over his left eye.  A jury could infer from this unique method of operation that Cruz was the one who robbed the Bank of America.  *See United States v. Tate*, 586 F.3d 936, 945 (11th Cir. 2009) (stating that a jury could infer the identity of the perpetrator from his *modus operandi*).  Supportive of this inference was evidence that Cruz hurt his left eye around the time of the Bank of America robbery and was off work on the day of the robbery.

Other similarities between the Bank of America and Wachovia robberies further supported the inference that both banks were robbed by the same individual.  In both cases, the robber was described as very short, approximately 5'1," and wore a long-sleeved, button-down shirt, a baseball cap, and a dark-colored backpack.

Cruz emphasizes that none of the Bank of America employees were able to identify him, that none of the DNA samples or fingerprints lifted from Noguel's car matched his, and that no evidence showed that he knew anything about bomb-making.  However, this lack of positive evidence was not fatal to the government's case.  As discussed above, Diaz's identification of Cruz on the

10

surveillance photos, together with other circumstantial evidence, pointed to Cruz as the robber. *See Tate*, 586 F.3d at 944-45 (rejecting the defendant's argument that several bank tellers were unable to identify him as the robber, given that circumstantial evidence of guilt, as opposed to direct evidence, may suffice for conviction).

In sum, even if it was possible to infer that Cruz did not commit the Bank of America robbery, the circumstantial evidence presented at trial was sufficient to support his conviction. *See Henry*, 920 F.2d at 877 ("It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." (quotation omitted)).

## B.  Reasonableness of Sentence

We review the reasonableness of a sentence under a "deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41, 128 S.Ct. 586, 591, 169 L.Ed.2d 445 (2007).  First, we determine "whether the district court committed any significant procedural error" and, second, "whether the sentence is substantively reasonable under the totality of the circumstances." *United States v. Turner*, 626 F.3d 566, 573 (11th Cir. 2010).  "A sentence may be procedurally

unreasonable if the district court improperly calculates the Guidelines range, treats the Guidelines as mandatory rather than advisory, fails to consider the appropriate statutory factors, selects a sentence based on clearly erroneous facts, or fails to adequately explain the chosen sentence." *United States v. Gonzalez*, 550 F.3d 1319, 1323 (11th Cir. 2008). "The review for substantive unreasonableness involves examining the totality of the circumstances, including an inquiry into whether the statutory factors in § 3553(a) support the sentence in question." *Id.* at 1324.[2] We do not apply a "presumption of reasonableness" to sentences within the guideline range, but "ordinarily will expect" a within-guideline sentence to be reasonable. *United States v. Phaknikone*, 605 F.3d 1099, 1107 (11th Cir. 2010), *cert. denied*, 131 S.Ct. 643 (2010).

Although Cruz characterizes his claim as that of substantive unreasonableness, he does not argue that any particular § 3553(a) factors supported a lower sentence, and he does not point to any specific mitigating

---

[2] Under § 3553(a), a sentencing court must impose a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing set forth in § 3553(a)(2), which include the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public from the defendant's further crimes. 18 U.S.C. § 3553(a)(2). Other factors to be considered in imposing a sentence include the nature and circumstances of the offense, the history and characteristics of the defendant, the available sentences, the applicable guideline range, the need to avoid unwarranted sentence disparities, and the need to provide restitution to victims. *Id.* § 3553(a)(1), (3)-(7).

circumstances.  He only alleges, as he did at sentencing, that he was innocent of the Bank of America robbery and that the district court should not have considered that robbery in sentencing him.  But, even if some evidence cast doubt on his guilt, the district court did not err in refusing to disregard the Bank of America robbery in sentencing him.[3]  *See United States v. Costales*, 5 F.3d 480, 488 (11th Cir. 1993);  *see also United States v. Schlaen*, 300 F.3d 1313, 1318 (11th Cir. 2002). We also note that Cruz's 108-month total sentence fell within the applicable guideline range and was far less than the 25-year statutory maximum sentence authorized for each count.  Because Cruz's total sentence was reasonable, we affirm.

**AFFIRMED.**

---

[3]  Notably, the surveillance video relied on by Cruz at sentencing does not actually exculpate him because it does not show that the robber was taller than Casado to any significant degree.  Rather, Cruz and Casado appear to be of about the same height in the video, which is entirely consistent with Casado's testimony.